Hubert Dean **RHOADES**, Bankrupt,
Appellant,

v.

C. Douglas **WIKLE**, Appellee.

No. 25260.

United States Court of Appeals,
Ninth Circuit.

Dec. 20, 1971.

———◆———

William J. Tiernan (argued), of Tiernan & Moneymaker, Los Angeles, Cal., for appellant.

Frances O. Drummond (argued), Los Angeles, Cal., for appellee.

Before DUNIWAY, TRASK and CHOY, Circuit Judges.

CHOY, Circuit Judge:

In this California bankruptcy case, Hubert D. Rhoades appeals an order of the District Court affirming a refusal by the Referee in Bankruptcy to grant a discharge on his voluntary petition of bankruptcy. The discharge was refused on the ground that the bankrupt had "failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained" as required by § 14(c) (2) of the Bankrutpcy Act, 11 U. S.C. § 32(c) (2). Neither the referee nor the court felt that "such acts or failures were justified under all the circumstances of the case." We agree and affirm.

Prior to 1968, the bankrupt and his wife, Virginia, both licensed real estate brokers, worked at a neighborhood real estate business known as Rhoades Realty. The business license was issued to Virginia, doing business as Rhoades Realty. She hired the clerical personnel and ran the quotidian office affairs. The bankrupt, who was also a railroad conductor, spent between five and ten percent of his time working at Rhoades Realty listing and selling real estate, receiving commissions. While Virginia ordinarily kept the business records, the bankrupt kept them on at least one occasion when his wife's license was suspended.

After a long period of honest business dealings, Virginia embarked on a series of fraudulent schemes, at least one of which resulted in a California civil judgment against her personally. She deserted her husband in late 1967, disappearing completely. The bankrupt continued the realty business until early 1968, when the pressure of creditors and the burden of straightening out Rhoades Realty's business affairs proved too much. He then filed the present voluntary petition in bankruptcy.

■■ At the threshold lies the issue of whether the bankrupt had a duty to keep business records for Rhoades Realty before his wife deserted him.[1] We find he did have such a duty. First, he was a licensed and active real estate broker, who listed ten properties during 1967 and sold five. He was under a duty, pursuant to California Real Estate Law § 10148 to "retain for three years copies of all listings, deposit receipts, canceled checks, trust records, and other documents executed by him or obtained by him in connection with any transactions for which a real estate broker license is required," and to maintain records of the trust fund accounts which he had to establish under regulations of the California real estate law Commissioner. 10 Cal.Admin.Code §§ 2830 and 2831. As a salesman, the bankrupt was not required to keep records of his transactions; but as a broker, he had a statutory duty to do so. Nor was he freed from that duty by registering with the Real Estate Commissioner as a salesman. Even if the bankrupt had entered into a written agreement with his wife under § 2771(e) of the regulations of the Real Estate Commissioner, contained in Title 10 of the Cal.Admin. Code, recognizing him as her salesman, such an agreement only excused him from maintaining a separate shingle outside their office, not from keeping records and books.

Second, the affairs of Rhoades Realty were run in such a manner that it is impossible to separate the bankrupt's interest from that of his wife or the realty business itself. Trust, commission, and personal funds of both husband and wife were freely commingled with business funds in numerous bank accounts. The sources and disbursements of funds

---

1. The judgment of the California Superior Court that the bankrupt is not liable for his wife's fraud is not conclusive on this issue. The state court found that the bankrupt and his wife were not partners, and that even if they were partners, her fraudulent conduct was done outside the scope of the partnership and without his knowledge. These findings did not adjudicate the bankrupt's duty to keep records.

cannot be traced into or out of any of the numerous personal, joint, and nominally business accounts. Virginia and the bankrupt took title to real property as joint tenants. They both had listings as active brokers and listed and made sales. Both received and deposited moneys as brokers, and both had equal and joint control over the various trust, checking, and business accounts. The bankrupt was as much a part of this venture as was Virginia; he shared in her duty to keep books and records for Rhoades Realty.

■ We also conclude that the records the bankrupt did present to the referee were inadequate under § 14(c)(2). Section 14(c)(2) does not prescribe a rigid standard of perfection in keeping records or making business accounts. It simply requires that the bankrupt present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past. Each case rests of necessity on its own facts, and upon a consideration of the bankrupt's specific business venture and the reasonable requirements of book and record keeping in that particular field. Section 14(c)(2) protects the bankrupt's creditors, however; and the referee in bankruptcy is given great discretion, with which the court will not interfere except in cases of gross abuse of discretion. Noroian v. Hern, 422 F.2d 1092 (9th Cir. 1970); Burchett v. Myers, 202 F.2d 920 (9th Cir. 1953); 1A Collier on Bankruptcy 1374, ¶ 14.34 (14th ed. 1971).

■ The bankrupt presented numerous cancelled bills and checks, rent receipt books, tax bills, and manila envelopes filled with documents, all of which purportedly comprised the business records of Rhoades Realty. A separate manila envelope was kept for each piece of real estate, and the notations on the envelope and the receipts and papers kept within it comprised the business record of each transaction. No master ledger of any kind was kept. The bankrupt himself could not tell from the office ledger what disbursements had come from office funds or what the disbursements were for. On examining the receipts, he could not tell the payee or the payor, or the purpose of the payment. Nor could he verify from the rent receipt books the amounts owed for services rendered in collecting rents. A certified public accountant, who had examined the records for the trustee in bankruptcy, testified that the records were completely inadequate to show the true financial position of Rhoades Realty. He could not identify funds as trust, business, or personal funds; nor could he trace funds, deposits, or disbursements through the various bank accounts.[2]

The bankrupt here was engaged in a relatively extensive and complicated business, closely regulated by statute. His methods of keeping business records were haphazard at best, incomplete on the central problem of flow of funds. The records he presented to the referee were clearly inadequate to depict to his creditors his general financial situation. Nor has the bankrupt demonstrated any justification for his failure to keep adequate records. We conclude that the referee's determination here was not clearly erroneous and that it was based on established principles of law. Accordingly, the order of the District Court approving the determination and denial of discharge is

Affirmed.

2. The failure of this expert witness to attempt to segregate funds into those belonging to Virginia, the bankrupt, and Rhoades Realty does not lessen the credibility of his testimony. The extensive commingling of funds between accounts would have made any such divisions impossible. The bankrupt's own expert CPA testified that while the record as presented to him—which omitted income tax and bank account forms examined by the trustee's CPA—could be placed in orthodox form and would be accurate, he was not at all sure that they would present a complete picture of the bankrupt's financial dealings.