In re The TWO "S" CORPORATION, an Arizona corporation, Debtor.

Donald ROMLEY, Trustee, Plaintiff–Appellant,

v.

SUN NATIONAL BANK, a national banking association, and The North American Bank, an Arizona banking corporation, Defendants–Appellees.

No. 88–2615.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1989.

Decided May 23, 1989.

James M. Marlar and Melinda S. Barnett, Teilborg, Sanders, and Parks, P.C., Phoenix, Ariz., for plaintiff-appellant.

S. Cary Forrester, Kalish and Forrester, Clint W. Smith, Smith and Evans, Phoenix, Ariz., for defendants-appellees.

Before CHOY, WALLACE and WIGGINS, Circuit Judges.

CHOY, Circuit Judge:

## OVERVIEW

The bankruptcy trustee, Donald Romley ("Romley"), appeals from a partial summary judgment in favor of two of the debtor's secured creditors, Sun National Bank and North American Bank (the "Banks"). In granting the partial summary judgment, the Bankruptcy Court held that the price obtained for the debtor's equipment at a court ordered sale represented the "value" of that equipment for the purpose of determining the extent to which the Banks' claims were secured under 11 U.S.C. § 506(a). The Bankruptcy Court's decision was affirmed by the Bankruptcy Appellate Panel. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and we affirm.

## FACTS

The debtor, the Two "S" Corporation, operated several dry cleaning and laundry establishments. On March 20, 1986, the debtor filed a Chapter 11 petition. In this petition, the debtor listed the value of its equipment as $363,677. At the time the petition was filed the debtor owed $218,585 to Sun National Bank and $135,940 to North American Bank. These debts were secured by the debtor's equipment and accounts receivable (hereinafter the "equipment").

After filing in Chapter 11, the debtor continued to operate as a debtor in possession. On October 3, 1986, Romley was appointed trustee. Two weeks later, Romley sought authority to sell the debtor's equipment, which constituted the debtor's only significant asset. Romley requested that the court approve any offer of at least $225,000.

On November 4, 1986, after notice to all interested parties, the court conducted a hearing on the proposed sale. Several parties bid on the equipment. The court ulti- mately approved the sale to the highest bidder for a price of $230,000.

On March 3, 1987, Romley filed a complaint against all parties claiming an interest in the equipment, seeking to determine the validity and priority of the various liens on the equipment and to determine its value. The Banks were named as defendants in this complaint.

Sun National Bank and North American Bank came to an independent agreement about the priorities of their liens. The Banks then filed a motion for summary judgment against Romley and against the other creditors. The Banks claimed that the price obtained at the sale dispositively determined the value of the equipment and that the Banks were entitled to the entire proceeds from the sale because their loans were the only debts that were properly secured by the equipment.

In opposition to the motion, Romley submitted his affidavit and the affidavit of the purchaser of the equipment. Romley's affidavit included estimates of the equipment's value which Romley had received prior to the sale of the equipment. These estimates ranged from a liquidation value of $80,000 to a retail value of $171,708. The purchaser's affidavit expressed the opinion that the equipment would not have had a liquidation value of $230,000 and explained his reasons for paying a higher price. One reason was that the equipment was located on the premises where the Two "S" Corporation had previously operated. The purchaser was independently trying to lease these premises and stated that the equipment was more valuable to him because it was already there.

Romley argued that these affidavits showed that the equipment was worth less than the amount that the purchaser paid for it, and that the purchaser only paid the

price he did because he was purchasing an intangible asset as well as the equipment. Therefore, Romley argued, an evidentiary hearing was required to determine the "real" value of the equipment.

The bankruptcy court entered partial summary judgment in favor of the Banks, finding that the $230,000 in proceeds from the sale represented the value of the equipment. The court determined that a court approved sale of assets conclusively determines the value of those assets.[1]

The partial summary judgment was certified as a final judgment in accordance with Fed.R.Civ.P. 54(b). Romley appealed to the Bankruptcy Appellate Panel of the Ninth Circuit. The BAP affirmed, and entered judgment on March 21, 1988. This appeal was timely filed.

## STANDARD OF REVIEW

■ We review decisions of the Bankruptcy Appellate Panel de novo. *In re Bialac*, 712 F.2d 426 (9th Cir.1983); Both the BAP and this court review the Bankruptcy Court's decision to grant summary judgment de novo. *In re California Canners and Growers*, 62 B.R. 18, 18–19 (9th Cir. BAP 1986). The standard for granting summary judgment in an adversarial bankruptcy proceeding is the same as under Rule 56(c). F.R.Bankr.P. 7056. Summary judgment is appropriate if, in viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact. *Lundy v. Union Carbide Corp.*, 695 F.2d 394, 396 (9th Cir.1982).

## DISCUSSION

■ Romley argues that the grant of summary judgment was improper because the valuation of assets is always a factual question. He contends the bankruptcy court erred in fixing a value for the property without holding a full evidentiary hearing in which other factors influencing the value could have been considered. Specifically, Romley challenges the bankruptcy court's refusal to consider two factors. First, he argues the court should have considered appraisals he had gotten on the equipment prior to the sale which stated various estimated values for the equipment depending upon how the equipment was sold. Second, Romley contends the court should have considered his efforts in keeping the business operating. Because of these efforts, he claims, an intangible asset, the beneficial location of the equipment, was sold. Romley argues that the purchaser's affidavit shows that the purchaser bought something in addition to the equipment.

However, Romley has failed to show that any purpose would be served by requiring an evidentiary hearing. At the time the motion for summary judgment was granted, all of the facts that Romley contends should influence the determination of value were before the bankruptcy court and were not disputed. The appraisals and the purchaser's affidavit were included in Romley's opposition to the motion for summary judgment and the court knew what Romley had done to continue operating the business up until the time of the sale. The Banks did not challenge the validity of the appraisals or dispute that they were realistic estimates of the price the equipment may have sold for if it had been sold in

---

1. The bankruptcy court denied the Banks' motion for summary judgment against the other creditors. It did not determine how the proceeds from the sale were to be divided among the creditors because it found material issues of fact existed regarding the priorities of the various liens on the equipment. The other creditors who claimed to possess security interests in the equipment subsequently settled their claims with the Banks.

some other manner. Nor did the Banks question the veracity of the purchaser's statements about his motives for purchasing the equipment for the price he did. The Banks did not dispute that Romley operated the business until the time of sale.

All of the facts that Romley argues should have been considered were before the court, and were not in dispute. Therefore, no purpose would to be served by an evidentiary hearing and a summary determination was appropriate.

■ After considering the facts presented by Romley, the bankruptcy court determined that these facts were legally insignificant because of the court-approved sale. We agree.

### A. *The appraisals as evidence of value*

Romley argues that because he had appraisals which gave different estimated values for the equipment, the bankruptcy court was required to hold an evidentiary hearing to consider the best valuation method. We have found no cases holding that after a single asset is sold at a commercially reasonable sale the court is still required to consider other possible methods of valuation. Rather, the cases state that the price paid at a commercially reasonable sale is the best evidence of value. *In re Walkup*, 28 B.R. 225, 227 (Bankr.N.D.Ind. 1983) ("Actual sales are the best evidence [of value]."); *In re The Kids Stop of America, Inc.*, 64 B.R. 397, 401 (Bankr.M. D.Fla.1986) (If there is a disposition of the property, "then the valuation of the collateral should be based on the funds received from the disposition as long as the disposition was commercially reasonable."). Romley does not challenge the reasonableness of the sale. Therefore, the sale price is better evidence of the property's value than any prior appraisals.

### B. *Sale of more than just the equipment*

Romley contends that the bankruptcy court erred in determining that the sale price equaled the value of the equipment because more than equipment was sold. He claims that due to his special efforts in keeping the business open, the purchaser bought not only equipment, but also an intangible asset belonging to the general estate: the location of the equipment.[2]

To support this argument, Romley presented the purchaser's affidavit. In this affidavit, the purchaser expressed the opinion that the equipment did not have a liquidation value of $230,000. The purchaser explained that he had been willing to pay $230,000 because his company was independently negotiating for leases on the premises where the equipment was located. If he obtained these leases his company would not need to pay to have the equipment removed, which would increase the equipment's value to him by $50,000.[3]

---

**2.** Romley's suggestion that he made extraordinary efforts to keep the business operating until the time of sale is not supported by the facts. The debtor had been continuing operations as a debtor in possession for six months. The fact that Romley managed to continue to operate the business for another month while arranging the sale does not seem extraordinary. It is the rule, rather than the exception, that a Chapter 11 trustee will attempt to continue operating the business in order to preserve the assets. 11 U.S.C. § 1108. Nor is the fact that he borrowed some money during this time unusual. The authority to continue business includes the right to incur unsecured debts for ordinary operating expenses. 11 U.S.C. § 364(a).

**3.** The purchaser also stated additional reasons for paying the price that did which had nothing to do with the location of the equipment. He said he received tax depreciation advantages based upon the purchase price paid. He also stated that buying used equipment rather than new saved the company a three to six month delivery delay.

Romley contends this affidavit shows that the purchaser was buying something more than equipment. However, Romley's position is directly controverted by the evidence. The Bill of Sale specifically stated that the only item being sold was the equipment, *"not ... the leasehold interests, goodwill, and trade name(s)."* (emphasis in the original). The sale was not contingent upon the purchaser's acquisition of the leases. The court order regarding the sale, which was incorporated by reference into the Bill of Sale, stated that the purchaser was assuming the risk that he would not be able to lease the premises. In addition, the purchaser's affidavit stated that "acquisition of the locations was not a part of our offer for the equipment."

This evidence shows that the purchaser bought only the equipment. The purchaser's motives for purchasing the equipment and for paying the price that he did are, therefore, irrelevant. Purchasers have many motives for choosing to buy an item at a given price. These motives do not affect the item's value. By definition, when there has been a fair sale the purchase price reflects the fair market value of the asset.[4]

### CONCLUSION

When there has been a fair, arms-length transaction the purchaser's stated reasons for paying the price he did are irrelevant in assigning a value to an asset. Evidence of other appraised values is also irrelevant, because the sale price is a better indicator of the asset's value than any estimate of value given prior to the sale. The bankruptcy court properly found that, under the facts of this case, the value was conclusively determined by the sale price.

AFFIRMED.

---

**4.** Black's Law Dictionary 536 (5th ed. 1979) defines "Fair Market Value" as:

The amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.