**In re Deborah M. COX, Debtor.**

**Deborah M. COX, Appellant,**

v.

**Paul LANSDOWNE, Trustee, Appellee.**

No. 89–35081.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1989.

Decided June 8, 1990.

**1400**

John L. Svoboda, Eugene, Or., for debtor-appellant.

G. Jefferson Campbell, Medford, Or., for trustee-appellee.

Before WRIGHT, TANG and FERNANDEZ, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In a case involving massive securities fraud, flight in the dark of night from angry creditors, and avoidance of the law for several months, we consider whether the bankruptcy court erred in denying a discharge in bankruptcy for failure to maintain books and records as required under 11 U.S.C. § 727(a)(3).

## BACKGROUND

After marrying in 1973, Stephen and Deborah Cox resided in or around Medford, Oregon. She taught school until 1980, when she quit working after having her first child. At that time, Mr. Cox provided the family's sole support. Mrs. Cox did not know the source of funds used to maintain the couple's lifestyle.

Over the years of their marriage, she signed numerous documents, in which she became, with Stephen, a co-owner of at least 14 parcels of real estate, a partner in at least two partnerships, and an officer or director in at least four corporations. Her signature appearing on additional documents had been forged.

Deborah did not participate actively in any of these ventures. She did not discuss business matters with Stephen, nor did she inquire into matters concerning business transactions, including those involving herself. She admitted that she kept no books or records for any of the businesses or property in which she had an interest.

After dark on September 24, 1984, the family left Medford for Monterey, California. Stephen told Deborah they were leaving to get away from angry creditors. When they arrived in San Francisco, he was informed that an angry creditor was looking for him in Medford. They took the next flight to Hawaii, where they lived as fugitives for several months.

On October 29, 1984, an involuntary bankruptcy proceeding was filed against Deborah. After the couple's second child was born in May 1985, they returned to California. In July, after learning that the FBI was about to seek a warrant for her arrest, she left Stephen and returned to Oregon. She met then with government agents and the trustee in bankruptcy. Stephen's whereabouts are apparently unknown and he is apparently a fugitive from justice.

The trustee filed this adversary action in bankruptcy court, objecting to Mrs. Cox's discharge. After a four-day trial, the court denied the discharge for failing to maintain books and records as required by 11 U.S.C. § 727(a)(3). It found that the records presented to the court were inadequate. Although Mrs. Cox was in some respects a victim of her husband's actions, it found

that she was an intelligent and educated person. The court concluded that "a self-imposed curtain of ignorance" was an inadequate legal justification under § 727(a)(3).

The Bankruptcy Appellate Panel affirmed in an unpublished memorandum, one judge dissenting. We have jurisdiction of this appeal of the BAP decision under 28 U.S.C. § 158(d).

## DISCUSSION

### I. Standard of Review

 We review the BAP's decision de novo. *In re Two "S" Corp.*, 875 F.2d 240, 242 (9th Cir.1989). Because this court is in as good a position as the BAP to review the findings of the bankruptcy court, we review the bankruptcy court's factual findings for clear error, and its conclusions of law de novo. *In re Taylor*, 884 F.2d 478, 480 (9th Cir.1989); *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

█ In the context of discharges we have applied a more deferential standard. "Because the right to a discharge is a matter generally left to the sound discretion of the bankruptcy judge, we disturb this determination only if we find a gross abuse of discretion." *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984) (emphasis added) (citing *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982)). Our cases have not defined what is a "gross abuse of discretion." [1]

We must defer to the bankruptcy court's conclusion that the discharge should be denied unless its factual findings are clearly erroneous or it applies the incorrect legal standard. *See Tenn v. First Hawaiian Bank*, 549 F.2d 1356, 1357 (9th Cir.) (in applying the gross abuse of discretion standard in discharge cases, "[f]indings of fact

---

1. An early Fifth Circuit opinion described the appellate court's function in the discharge/books and records area:

 Congress intended that the district court should exercise a wide discretion. If the facts do not disclose a positive duty to keep the books and records, or, disclosing such a duty, there appears to be sufficient ground to warrant a finding of extenuating circumstances, an order of discharge should not be disturbed on appeal. Conversely, a denial of discharge

will not be overturned unless found to be clearly erroneous."), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *Hunt v. National Broadcasting Company, Inc.*, 872 F.2d 289, 292 (9th Cir.1989) (in the context of preliminary injunctions, "the court abuses its discretion if it did not apply the correct legal standard ..., or if it misapprehended the underlying substantive law.").

### II. Application of 11 U.S.C. § 727(a)(3)

The bankruptcy court denied Deborah's discharge under 11 U.S.C. § 727(a)(3), which states in relevant part:

> (a) The court shall grant the debtor a discharge, unless—
>
> > (3) the debtor has ... failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such ... failure to act was justified under all the circumstances of the case;

. . . . .

The purpose of this statute is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Underhill*, 82 F.2d 258, 260 (2d Cir.) (applying the predecessor provision of § 727(a)(3) in the Bankruptcy Act of 1898), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). "Creditors are not required to risk the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records." *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir.1953).

#### A. Bankruptcy Court's Finding of Inadequate Records

█ We first determine whether the bankruptcy court's finding that Deborah

---

should not be disturbed unless arbitrary or clearly unjust. Within this range of sound judicial discretion, the district court must interpret the facts and apply the rules of reasonable conduct in the light of business as well as judicial experience, to the end that the purposes of the Bankruptcy Act may be subserved.

*Texas Nat. Bank v. Edson*, 100 F.2d 789, 791 (5th Cir.1939), *quoted in* 4 L. King, *Collier on Bankruptcy* ¶ 727.03, at 727–53 (15th ed. 1979).

failed to keep or maintain adequate records was clearly erroneous. *See In re Horton,* 621 F.2d 968, 971 (9th Cir.1980). The bankrupt must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Id.* (quoting *Rhoades v. Wikle,* 453 F.2d 51, 53 (9th Cir.1971)).

The bankruptcy court found that it was impossible for the trustee or creditors to ascertain Deborah's financial position or to follow her business transactions with any assurance of accuracy. The trustee found no ledgers or books of account for the Coxes individually or for their major corporation. Deborah had interests in residential real estate, but there were no records concerning rental income or the source of payments for the underlying contracts or mortgages. The court's finding that the records were inadequate was not clearly erroneous. We affirm this portion of the court's decision.

### B. Deborah's Duty to Keep Records
#### 1. Deborah's "Shared Duty"

■ Having found the records inadequate, the bankruptcy court concluded that Stephen and Deborah shared in the duty to keep records. Relying on our decision in *Rhoades,* it found a shared duty because Deborah was inextricably involved in Stephen's business ventures.

In *Rhoades,* we considered a bankruptcy referee's denial of a husband's discharge for failing to keep adequate books or records. The Rhoades had owned a realty business, with the wife holding the business license and the husband working part-time as an agent. *Rhoades,* 453 F.2d at 52. Mrs. Rhoades became involved in a series of fraudulent real estate schemes, then deserted her husband. He continued to operate the business for a short time before filing a petition in bankruptcy. The referee denied his discharge for failing to keep adequate books or records. *Id.*

We held that Mr. Rhoades shared in his wife's duty to keep books and records for the real estate business. *Id.* at 53. We found that he had a duty under state law to keep records as a licensed real estate broker, and it was impossible to separate his interest from his wife's or the realty business itself. *Id.* at 52.

Although Deborah did not hold a professional business license and was not actively involved in her husband's businesses, the bankruptcy court did not abuse its discretion in finding that Deborah shared in Stephen's duty to keep books and records. Deborah owned jointly at least 14 parcels of real estate, was a partner with Stephen in at least two partnerships, and was an officer in at least four of his corporations. She was therefore engaged in relatively extensive and complex business transactions. *See id.* at 53; *Moffett v. Union Bank,* 378 F.2d 10, 11 (9th Cir.1967) ("The key factor to consider in regard to the duty to keep books is the complexity of the matters and transactions which would be recorded."); *In re Halpern,* 387 F.2d 312, 315 (2d Cir.1968) ("In most cases, the complexity of the bankrupt's business activities determines whether he should have maintained books.").

The bankruptcy court's finding that she shared in the duty to keep records was not a gross abuse of discretion.

#### 2. Deborah's Duty to Maintain Separate Records

■ Having found that Deborah shared in the duty to keep records, the court concluded:

> The debtor had a duty to her creditors to maintain her own records of business transactions. That duty may not be delegated. Thus, the debtor cannot justify her failure to keep books and records because as between the two of them, her husband, and not she, was responsible for their maintenance. (citations omitted)

It relied on our decisions in *Horton* and *Rhoades* in reaching this conclusion. Deborah argues on appeal that the shared duty standard does not prevent the court from considering reliance on her husband in determining whether her failure to keep

records was justified under all the circumstances. We agree.

Our cases do not support the conclusion reached by the bankruptcy court. In *Horton*, the bankrupt was a contractor who built a house for his daughter. In order to satisfy the record keeping requirement, he attempted to substitute his daughter's records for his own. *Horton*, 621 F.2d at 971. We found that Horton had a duty to maintain his own records, and could not rely on his daughter's records. *Id.* We did *not* find a shared duty between Horton and his daughter. Although it was relied upon by the bankruptcy court, *Horton* does not discuss whether persons with a shared duty can delegate record keeping responsibilities between or among themselves.[2]

Having found a shared duty, the bankruptcy court said that she could not justify her failure to keep records because she relied on her husband for their maintenance. We believe, however, that if she did in fact rely on Stephen for record keeping, such reliance *is* relevant in determining "justification" under § 727(a)(3). In any business relationship involving more

than one person, the "partners" will usually delegate responsibilities, including record keeping, among themselves. Such delegation is even more likely to occur in cases like this one where the "partners" are married, and one spouse has significantly more business experience, knowledge and expertise than the other.[3]

We hold that when a married couple shares a duty to maintain records under § 727(a)(3), the bankruptcy court should not refuse to consider one spouse's reliance on the other in determining whether a failure to keep records was justified under all the circumstances of the case.[4]

By failing to consider a relevant factor in making its justification determination, the bankruptcy court committed an error of law which constitutes a gross abuse of discretion. We reverse the BAP's decision, and remand to the bankruptcy court for a redetermination of Deborah's discharge.

On remand, the bankruptcy court should consider *all* circumstances of the case to determine if Deborah's failure to keep records was justified.[5] To the extent it is

---

2. Our opinion in *Rhoades,* also cited by the bankruptcy court, did not consider whether the husband relied on his wife to keep records in determining justification. It simply concluded that the bankrupt had not demonstrated any justification for failure to keep records. *Rhoades,* 453 F.2d at 53.

3. In this case, it also is possible that Stephen misled Deborah regarding the maintenance of records of their joint business transactions. The bankruptcy court found that she was "in some regards a victim of Stephen Cox' actions." In addition, he is a fugitive from justice. If it had considered reliance on Stephen, the court might have concluded that her failure to keep records was justified under all the circumstances.

4. The dissent says that our reasoning is flawed because, under settled contract principles, the delegator remains liable for the delegate's breach of performance. This analysis ignores the language of the bankruptcy provision, which provides that discharge is available if the failure to keep records "was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3). The UCC and the common law of contracts, however, provide no "justification" exception.

We are not persuaded by the dissent's contention that the situation presented in this case is analogous to the shared duty to pay a mortgage.

In the context of record-keeping, the only way for one to be certain that proper records are being kept is to maintain separate records of all transactions. We believe Congress included the "justification" exception, at least in part, to prevent this result when the delegation occurs between or among persons with a shared duty.

5. The court should consider, among other factors it deems relevant, (1) Deborah's intelligence and educational background; (2) her experience in business matters; (3) the extent of her involvement in the businesses for which discharge is sought; (4) her reliance on Stephen to keep records, including what, if anything, Deborah saw or was told that indicated her husband *was* keeping records; (5) the nature of the marital relationship; and (6) any record-keeping or inquiry duties imposed upon Deborah by state law.

In examining the couple's marital relationship, the court may find, for example, that Deborah feared Stephen to such an extent that she would not inquire into business matters or record-keeping requirements. It might also find that Stephen kept business matters secret from her, or that he misled her regarding such matters.

Because Deborah has failed to keep adequate records, the burden is on her to show that the failure was justified under all the circumstances. *See Horton,* 621 F.2d at 972; *Moffett,* 378

necessary to make a determination on this issue, the bankruptcy court should engage in additional fact finding.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

TANG, Circuit Judge, concurs in part and dissents in part:

I concur in the majority's holding that Deborah Cox maintained inadequate records. I also concur that she had a shared duty to maintain records. However, I dissent from the majority's conclusion that the bankruptcy court committed a gross abuse of discretion when it allegedly failed to consider as a relevant factor justifying Deborah Cox's failure to keep adequate records her claim that she delegated record keeping to her husband.

Deborah Cox sought in bankruptcy to discharge her debts which had accumulated in large part from her husband's fraudulent activities. The trustee objected to her discharge and alleged that she attempted to defraud creditors and to conceal her financial records. The adversarial matter was heard by the bankruptcy court, which then denied her discharge pursuant to 11 U.S.C. § 727(a)(3), which requires that a debtor maintain adequate records or provide a sufficient excuse.

The bankruptcy court found that Cox did not intentionally defraud her creditors, but that there was a failure to maintain records from which her financial condition could be determined. This lack of records made it impossible for the trustee or creditors to ascertain or follow the debtor's business transactions with any assurance of accuracy.

Cox argued to the bankruptcy court that she discharged her duty by relying on her husband to maintain the records. The bankruptcy court rejected Cox's argument and held that delegation of her duty to maintain adequate records to her husband was not justification sufficient to discharge her from responsibility.

On appeal to the bankruptcy appellate panel, Cox argued that the bankruptcy court's holding required her to maintain separate books. The bankruptcy appellate panel rejected this argument. It found that the bankruptcy court did not mandate duplicate bookkeeping but rather had held only that she had a shared duty to maintain books.

The majority agrees that Cox maintained inadequate records and does not dispute the fact that Cox had a shared duty to maintain records. The majority reverses, however, on the ground that the bankruptcy court failed to consider Deborah Cox's delegation of her duty to her husband as a relevant factor justifying her failure to maintain records.

I dissent. The basic principle is that even when a shared duty is delegated, the delegator retains the duty to perform when the delegate fails to perform and remains liable for the delegate's nonperformance. For example, if Stephen and Deborah Cox co-signed for a home loan, both have a shared duty to pay the mortgage. If Deborah delegated her duty to pay the mortgage to Stephen, Deborah still has (1) a duty to perform (pay the mortgage) and (2) liability for any breach (suffer eviction upon default). As UCC 2–210(1) states: "No delegation of performance relieves the party delegating of any duty to perform or any liability for breach."

This basic principle applies here. As the majority concedes, both Stephen and Deborah Cox had a shared duty to maintain records. Even if Deborah Cox delegated that duty, she remains liable for performance of the duty when Stephen fails to do so. She also bears the consequences of Stephen's nonperformance of that duty, the bankruptcy court's refusal to grant a discharge of debt under 11 U.S.C. § 727(a)(3).

Citing legal error, the majority remands for relitigation of Deborah Cox's justifications for nonperformance of her duty to maintain records. The court has already found that Cox's failure to keep records was not justified. It found that she was inextricably involved in the business ven-

F.2d at 11; *In re Sandow,* 151 F.2d 807, 809 (2d Cir.1945) ("The statute puts the burden squarely on the bankrupt who produces no financial records to produce at least a satisfactory explanation of their absence.").

tures of her spouse. The court recognized that she did not participate actively in the business, that she did not have business experience and that in some regard she was the victim of her husband's actions. Nevertheless, the bankruptcy court said: "[S]he certainly had the education and intelligence to keep and read documents she signed, to determine the extent of her assets and liabilities, to determine the sources of funds to satisfy the obligations she was incurring, and to make inquiries concerning those items she did not understand. Ms. Cox was not a person of limited intelligence who is incapable of understanding or determining the consequences of her actions."

On remand, the majority requires the bankruptcy court to reconsider these issues already addressed by the bankruptcy court —Cox's intelligence, business involvement and experience in business.

The majority's opinion gives the strong impression that the majority may feel that Deborah Cox is deserving of discharge as the unknowing victim of her husband's fraud. Although the majority's sympathy for Cox is not unreasonable, other equities weigh strongly in favor of preventing her discharge. Ms. Cox enjoyed the benefits of her husband's fraud for a number of years. Thus, while she may paint herself now as a victim, it is plausible and even probable that Cox knew that the financial source of her lavish life style was fraudulent. As an intelligent person who lived in an extravagant life style, Cox would naturally have had more than a passing interest in where and how that money was derived.

In short, the issue is whether the bankruptcy court clearly erred in its factual determinations about Cox's capacity to perform her duty. Given our standard of review and the conflicting interpretations of the evidence on whether Cox was an unknowing victim or a willing and knowing beneficiary, I am unable to conclude that the bankruptcy court committed clear error much less a gross abuse of discretion. I would affirm.