**In re Deborah M. COX, Debtor.**

**Paul LANSDOWNE, Trustee,
Plaintiff–Appellee,**

v.

**Deborah M. COX, Defendant–Appellant.**

**No. 93–35421.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 3, 1994 \*.

Decided Dec. 2, 1994.

---

\* The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

George W. Kelly and John L. Svoboda, Eugene, OR, for defendant-appellant.

Keith Boyd, Eugene, OR, for plaintiff-appellee.

Before FLETCHER, D.W. NELSON, and RYMER, Circuit Judges.

D.W. NELSON, Circuit Judge:

Deborah Cox appeals from the district court's decision affirming the bankruptcy court's finding that she was not entitled to a discharge under 11 U.S.C. § 727(a)(3) because she was not justified in failing to maintain books and records of her financial circumstances. We have jurisdiction under 28 U.S.C. § 158(d). We reverse.

## I. *BACKGROUND*

This is the second time this case has come before this court. *See In re Cox,* 904 F.2d 1399 (9th Cir.1990). The facts of this case are adequately set forth in our previous decision, *see id.* at 1400, and need only be summarized here.

Stephen and Deborah Cox were married in 1973 and resided thereafter in or around Medford, Oregon. After giving birth to the couple's first child, Ms. Cox quit her teaching position and Mr. Cox provided the family's sole support. Mr. Cox was involved in more than a dozen business enterprises, including several corporations and partnerships involved in real estate, diamond and bullion trading, and other investments.

During the course of their marriage, Ms. Cox signed numerous documents by which she became a co-owner of at least 14 parcels of real estate, a partner in at least two partnerships, and an officer or director in at

least four corporations. Ms. Cox did not participate actively in any of these ventures. She did not discuss business matters with her husband, nor did she inquire into matters concerning business transactions, including those in which she nominally was involved. She kept no books or records of any of the businesses or properties in which she had an interest.

In September 1984, Stephen told Deborah that he was being pursued by angry creditors, so the family left Medford for Monterey, California. They later fled to Hawaii, where they resided as fugitives for several months. On October 29, 1984, an involuntary bankruptcy proceeding was filed against Ms. Cox. In May 1985, the couple and their two children returned to California. In July, when Ms. Cox learned that the FBI was about to seek a warrant for her arrest, she left her husband in California and returned to Oregon, where she met with government agents and the trustee in bankruptcy. Mr. Cox became a fugitive from the law.

The trustee filed this adversary action in bankruptcy court, objecting to Ms. Cox's discharge. The bankruptcy court denied the discharge, finding that Ms. Cox had failed to maintain books and records as required by 11 U.S.C. § 727(a)(3). It found that the records she presented were inadequate and that because she had a shared duty with her husband to keep records, she was not justified in failing to maintain records.

On appeal, this court affirmed the bankruptcy court's finding that the records were inadequate. *Id.* at 1402. However, we reversed the denial of discharge because the bankruptcy court had erred in refusing to consider Ms. Cox's reliance on her husband as a justification for her failure to keep records. *Id.* at 1403. On remand, the bankruptcy court found that Ms. Cox was not reasonable in relying upon her husband to keep business records and thus her failure to keep adequate records was not justified.

## II. *DISCUSSION*

### A. *Standard of Review*

This court applies the same standard of review applied by the district court to the bankruptcy court's decision. *In re Siragusa,* 27 F.3d 406, 407 (9th Cir.1994). "Because discharge is a matter generally left to the sound discretion of the bankruptcy judge, we disturb this determination only if we find a gross abuse of discretion." *In re Cox,* 904 F.2d 1399, 1401 (9th Cir.1990) (citations omitted). Accordingly, "we must defer to the bankruptcy court's conclusion that the discharge should be denied unless its factual findings are clearly erroneous or it applies the incorrect legal standard." *Id.*

### B. *The Burden of Proof*

Title 11 of the United States Code, § 727(a)(3) provides in relevant part:

(a) The Court shall grant the debtor a discharge, unless—

(3) the debtor has ... failed to keep or preserve any recorded information, including books, documents, and papers, from which the debtor's financial condition of business transactions might be ascertained, unless such ... failure to act was justified under all the circumstances of the case;

As we stated in our earlier opinion in this case, "[t]he purpose of [section 727] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Cox,* 904 F.2d at 1401 (internal quotations and citations omitted). The initial burden of proof under § 727(a)(3) is on the plaintiff. Fed.R.Bank.P. 4005. "In order to state a prima facie case under section 727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Meridian Bank v. Alten,* 958 F.2d 1226, 1232 (3d Cir.1992). Once the objecting party shows that the debtor's records are absent or are inadequate, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records. *Id.* at 1233; *Cox,* 904 F.2d at 1404 n. 5; *Matter of Horton,* 621 F.2d 968, 972 (9th Cir.1980); *In re Lawler,* 141 B.R. 425, 428–29 (9th Cir. BAP 1992) (stating that a debtor must "provide a credi-

ble explanation" for failure to keep records); see also In re Wolfson, 152 B.R. 830, 832 (S.D.N.Y.1993); In re Folger, 149 B.R. 183, 188 (D.Kan.1992); In re Pulos, 168 B.R. 682, 690 (Bankr.D.Minn.1994); In re Sausser, 159 B.R. 352, 355–56 (Bankr.M.D.Fla.1993). We have already affirmed the bankruptcy court's factual finding that the business records maintained by Ms. Cox were inadequate. In re Cox, 904 F.2d at 1402. Thus, the only issue in this case is whether Ms. Cox's explanation that she relied upon her husband to keep records satisfied her burden of presenting evidence that she was justified in failing to maintain adequate records.

■ We have previously held that "exceptions to dischargeability should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." Matter of Kasler, 611 F.2d 308, 310 (9th Cir.1979) (citing Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)); In re Bugna, 33 F.3d 1054, 1059 (9th Cir.1994) ("The [Bankruptcy] Code is designed to afford debtors a fresh start, and we interpret liberally its provisions favoring debtors."). The Supreme Court has recognized that while the "fresh start" is "a central purpose of the [Bankruptcy] Code," this opportunity is limited to the "honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); see In re Bugna, 33 F.3d at 1059; In re Britton, 950 F.2d 602, 606 (9th Cir.1991). Here, the bankruptcy court specifically found that Ms. Cox had no knowledge of her husband's business affairs, did not participate in the transfer or removal of assets, and lacked an actual intent to hinder, delay or defraud a creditor or an officer of the estate. Cf. In re Lansford, 822 F.2d 902, 905 (9th Cir.1987) (refusing to base denial of wife's discharge on strict agency or partnership principles, but finding wife was aware of and participated in her husband's filing of false financial statement); Matter of Walker, 726 F.2d 452, 454 (8th Cir.1984) (holding that "more than the mere existence of an agent-principal relationship is required to charge the agent's fraud to the principal" and that the agent's fraud will be imputed to the principal only "if the principal either knew or

should have known of the agent's fraud"); In re Lovich, 117 F.2d 612, 614–15 (2d Cir.1941) (stating that "[a] discharge is a privilege accorded to bankrupts by the statute unless they are chargeable with conduct showing some lack of personal business morality"). We note, however, that "intent to conceal one's financial conditions is not a necessary element for the denial of discharge under § 727(a)(3)." In re Wolfson, 139 B.R. 279, 287 (Bankr.S.D.N.Y.1992), aff'd, 152 B.R. 830 (S.D.N.Y.1993); In re Pulos, 168 B.R. 682, 690 (Bankr.D.Minn.1994); In re Savel, 29 B.R. 854, 856 (Bankr.S.D.Fla.1983). Thus, the burden was on Ms. Cox to show by a preponderance of the evidence that her failure to keep adequate business records was justified under all of the circumstances in this case. See In re Lawler, 141 B.R. at 429; In re Pulos, 168 B.R. at 690 ("If the lack of records is not adequately explained, the debtor is not entitled to a discharge.") (citations omitted); In re Wolfson, 139 B.R. at 287. If the extent and nature of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, she must show more than that she did not comprehend the need for them. In re Sandow, 151 F.2d 807, 809 (2d Cir.1945) (applying § 14(2) of the Bankruptcy Act). In such cases, the justification must indicate that because of unusual circumstances, the debtor was absolved from the duty to maintain records herself. Id.

C. The Bankruptcy Court's Findings of Fact and Conclusions of Law

■ On remand, the bankruptcy court considered the six factors this court had identified to determine whether Ms. Cox's failure to keep adequate business records was justified, id. at 1403 n. 5, and made additional factual findings regarding each of those factors. The six factors are: (1) Ms. Cox's intelligence and educational background; (2) her experience in business matters; (3) the extent of her involvement in the businesses for which discharge is sought; (4) her reliance on [her husband] to keep records, including what, if anything, Ms. Cox saw or was told that indicated her husband was keeping records; (5) the nature of the

marital relationship; and (6) any recordkeeping or inquiry duties imposed upon Ms. Cox by state law.

The bankruptcy court found that Ms. Cox is an intelligent woman with a master's degree, but she was not trained in recordkeeping, and had not acquired the skills "generally necessary to deal with financial and or business matters." The court found that Ms. Cox was not actively involved in her husband's business, that she relied upon her husband to manage all of the couple's business affairs, and that she avoided questioning his business practices for fear of provoking a confrontation in their marital relationship. The court also found that Ms. Cox was obligated under state laws to keep certain records but that she legally could rely on others to fulfill those duties.

The bankruptcy court found that the Coxes' marital relationship was one in which the spouses effectively divided their responsibilities along rigid lines. After she quit her teaching position "and became strictly a homemaker," Ms. Cox was responsible for caring for the children, while Mr. Cox managed all of the couple's business affairs, as well as "the financial obligations of the household, including utilities, mortgage payments, car payments, and credit payments." "[The Coxes'] understood that she would be the homemaker and would not have to worry about business affairs." Consistent with this division of the couple's responsibilities,

> [Ms. Cox] simply signed those documents, which were many, that her husband asked her to sign. She did not understand much of what she was signing. She did not read much of what she signed. She did not ask questions of anyone about what she signed.

The bankruptcy court further found that Ms. Cox "went along with any decision [Mr. Cox] made without questioning and with confidence that he would be successful in his ventures on behalf of the family. Consciously or unconsciously she avoided any possible confrontation for the sake of marital harmony." Ms. Cox testified that had she refused to sign anything her husband asked her to sign, there "would have been a confrontation." This evidence and the bankruptcy court's statement that it would find a spouse with shared recordkeeping duties to be justified in relying on her spouse, "where the spouse, for whatever reason, was afraid of the spouse who was in control of the business," are difficult to reconcile with the court's conclusion that "[t]here was no testimony presented that would support any finding that Mrs. Cox was afraid of Mr. Cox."

In spite of these findings, the court concluded that Ms. Cox's failure to keep records was not justified. It stated that the issue required the application of an objective standard, see In re Pulos, 168 B.R. at 692, and concluded that Ms. Cox's reliance upon her husband was not reasonable under the circumstances, largely because she failed "[to] inquire[ ] of anyone, including her husband, to what extent he was carrying out any of [the recordkeeping] responsibilities." The court described Ms. Cox as "living in a mental and physical cocoon.... [T]his arose largely as a result of a self-imposed curtain of ignorance." According to the bankruptcy court, someone of Ms. Cox's sophistication and intelligence bore an affirmative duty to inquire whether or not her husband was keeping the proper records for all of the business transactions in which she was legally involved.[1] Only if she had made such an inquiry would her subsequent reliance on her husband be reasonable.

We disagree.

## D. *Analysis*

■ Given the absence of warning signals, Ms. Cox's reliance on her husband was objectively reasonable under the totality of the

---

1. The bankruptcy court stated:
   This court finds that where any number of documents are signed and there is a pattern of inclusion in business affairs over a lengthy period of time a reasonable person would make some inquiry of a knowledgeable person about the nature of her legal responsibilities, including that of keeping records.

   The bankruptcy court declared that had Ms. Cox inquired and found out about the recordkeeping requirements applicable to her "she would have relied on Mr. Cox to keep the records as part of her general reliance on him to handle all business matters."

circumstances presented here.. "Justification for [a] bankrupt's failure to keep or preserve books or records will depend on ... whether others in like circumstances would ordinarily keep them." *Matter of Russo*, 3 B.R. 28, 34 (Bankr.E.D.N.Y.1980) (citing *White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir.1941)); *In re Harmon*, No. 91–10288–B, 91–1047, 1992 WL 13624, at * 5 (Bankr.W.D.Tenn. Jan. 10, 1992) (finding that a court must consider reasons for failure to keep records "on a case-by-case basis" and should include factors such as the debtor's education, the sophistication of debtor's business experience, the size and complexity of debtor's business, the debtor's personal financial structure, and "any other special circumstances that may exist").

In a case involving facts quite similar to those present here, the bankruptcy court in the Eastern District of Missouri, citing our previous decision in this case, found that a debtor named Ms. Cheek, who had considerably more business skills and managerial training than Ms. Cox, had reasonably relied upon her husband to maintain proper records of their finances. *In re Cheek*, 157 B.R. 1003 (Bankr.E.D.Mo.1993) (denying discharge on other grounds). Ms. Cheek was licensed to practice law in Missouri, held a real estate broker's license in Missouri, and licenses to sell real estate in Illinois and Florida. *Id.* at 1018. Unlike Ms. Cox, Ms. Cheek "ha[d] the capacity to understand and participate in complicated financial transactions similar to those [her husband] directed." *Id.* at 1019. Nevertheless, the court found Ms. Cheek was justified in not keeping her own records because "the evidence demonstrated that throughout the Cheeks' seventeen-year marriage Mr. Cheek had exercised virtually total control of the family finances." *Id.* Much like Ms. Cox, Ms. Cheek had frequently "signed documents at [her husband's] direction and had unquestionably written checks in accordance with his instructions." *Id.* Most important to our consideration of the facts before us, the court in the *Cheek* case found

> [Mr. Cheek] had never given [Ms. Cheek] any reason to doubt that he was maintaining proper financial records. Malcolm Cheek, a sophisticated businessman, was

quite capable of maintaining proper records detailing his and [Ms. Cheek's] financial condition and Ms. Cheek *had no reason to doubt* he was doing so.

*Id.* (emphasis added). Accordingly, the court found "that Mrs. Cheek relied on Mr. Cheek to maintain proper records of their finances and that her reliance was reasonable." *Id.; see also In re Craig*, 140 B.R. 454, 458–459 (Bankr.N.D.Ohio 1992) (granting discharge to a debtor who reasonably relied upon his sister-in-law's assurance that she would maintain records); *cf. In re Lawler*, 141 B.R. 425, 429 (9th Cir. BAP 1992) (denying discharge to a woman who claimed she was unaware of any need to keep records because "she was personally involved in the operation of the business and was a licensed realtor").

■ We find the reasoning of these bankruptcy court cases persuasive. Even a woman as sophisticated and skilled in legal and financial matters as Ms. Cheek would reasonably rely upon her spouse to maintain proper business records when the couple had developed a clear division of labor. As discussed above, the bankruptcy court clearly found such a relationship existed in the Cox household. In such circumstances, the spouse who has delegated the responsibility for maintaining the financial records need not inquire about those records absent some reason to be suspicious that they are not being kept properly. *See In re Goldstein*, 123 B.R. 514, 526 (Bankr.E.D.Pa.1991) (finding "a person is more aptly entitled to trust and rely on a spouse or another person with which one has a personal relationship than a mere business associate").

No warning signs were present here. Ms. Cox, like Ms. Cheek, "had no reason to doubt" that her husband was properly maintaining the couple's business records. As the bankruptcy court found, Ms. Cox was aware that her husband "had the appropriate career background for the work he did ... He had been a real estate broker, an insurance salesman, and a stockbroker ... [and] that Mr. Cox used the services of accountants and attorneys in his business affairs." Furthermore, in relying upon her husband to take care of the monthly financial obligations of

the household, Ms. Cox "had no idea the amount of money it took per month to pay obligations connected with the household." Ms. Cox did not open the bills and bank statements that arrived at the house. She set them aside for Mr. Cox to read and handle. While the court construed this as an example of Ms. Cox's "self-imposed curtain of ignorance," we find it was entirely consistent with "her general reliance on [Mr. Cox] to handle all business matters."

In fact, there were no warning signals that would justify Ms. Cox's being suspicious of her husband's recordkeeping:

> During [the critical] period there was no tax audit on any of [Mr. Cox's] businesses. During this period she was not approached by the Internal Revenue Service or any banks or investors with questions or information about the Cox business entities.

Thus, prior to the time that the Coxes left Medford, allegedly to escape from angry creditors, Ms. Cox had "no reason to doubt" her reasonable assumption that her husband was properly maintaining the couple's business records. We cannot accept the bankruptcy court's conclusion that it was unreasonable for a person in Ms. Cox's situation not to inquire of her husband and the professionals he employed about whether proper records were being kept.[2] As the bankruptcy court found, she actually relied on her husband to run all business and financial affairs, had no knowledge of the details of those affairs, lacked training that would permit her to make reasonable inquiry into the adequacy of recordkeeping, and had no warning of her husband's deficiencies. Absent any indications that her husband was not properly managing the couple's business dealings, Ms. Cox did not have an affirmative duty to question her husband or the professionals he employed about their recordkeeping practices.[3]

### III. CONCLUSION

We hold that the bankruptcy court erred in imposing a duty of inquiry on Deborah Cox. In the absence of any warning signals, and in light of all the other circumstances found by the bankruptcy court, its failure to discharge Ms. Cox was an abuse of discretion. Accordingly, the judgment of the district court is REVERSED and this case is REMANDED for the district court to enter a judgment of discharge.

---

2. The district court stated that Ms. Cox failed to assure that anyone was executing the business responsibilities she incurred through the various documents she signed at her husband's request. She could not reasonably have believed that no personal business responsibilities were incurred through those actions. Op. at 7.

   When she signed legal documents, Ms. Cox understood that she was incurring legal responsibilities, but she reasonably assumed, in light of her marital relationship discussed above, that her husband was managing the couple's business affairs and keeping the necessary records to comply with her legal obligations.

3. Unlike those cases in which courts have denied a discharge to a wife who relied upon her husband's handling of business matters that resulted in the *filing of false financial information, see e.g., In re Lansford,* 822 F.2d 902 (9th Cir.1987); *David v. Annapolis Banking & Trust Co.,* 209 F.2d 343 (4th Cir.1953); *Baldwin Oils & Commodities, Inc. v. Rosinoff,* 194 F.2d 985 (2d Cir. 1952); *In re Barrett,* 2 B.R. 296 (Bankr.E.D.Pa. 1980), here, Ms. Cox was not "recklessly indifferent" to the truth and, in fact, had a "reasonable ground to believe" that proper records were being maintained.