FILED

JUN 09 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No. EC-13-1171-TaKuJu
                                          )
MOHAMMAD REZA SALEHI,                     )    Bk. No. 12-26790
                                          )
                    Debtor.               )    Adv. Proc. No. 12-02251
_____        )
                                          )
MOHAMMAD REZA SALEHI,                     )
                                          )
                    Appellant,            )
                                          )
v.                                        )    MEMORANDUM[*]
                                          )
GLOBAL AUTOMOTIVE GROUP, INC.,)
                                          )
                    Appellee.             )
_____        )

Argued and Submitted on May 15, 2014
at Sacramento, California

Filed - June 9, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Thomas C. Holman, Bankruptcy Judge, Presiding
_____

Appearances:     Sasha F. Ganji argued for appellant Mohammad Reza
                 Salehi; Mark A. Serlin of Serlin & Whiteford, LLP,
                 argued for appellee Global Automotive Group, Inc.
                 _____

Before: TAYLOR, JURY, and KURTZ, Bankruptcy Judges.

_____

[*]    This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Appellant, chapter 7[1] debtor Mohammad Reza Salehi, appeals the bankruptcy court's summary judgment in favor of Global Automotive Group, Inc. ("Global Automotive")[2] denying Salehi's discharge under § 727(a)(3) and (a)(5). Because Global Automotive failed to demonstrate the absence of genuine disputes of material fact, we REVERSE.

**FACTS**

Salehi filed his bankruptcy petition on April 6, 2012, and obtained waiver of the filing fee.[3] He scheduled assets of $2,150 and liabilities of $1,137,949. The liabilities consisted of two judgments in favor of Tanl Investment Group totaling $1,118,000, medical expenses, and unpaid utilities. Salehi disclosed that he had no current income, but that a few days prior to filing bankruptcy he reapplied for unemployment

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Salehi filed a motion in this appeal seeking, among other things, to quash all pleadings, motions, briefs, and legal documents filed on behalf of Global Automotive on the grounds that Global Automotive's corporate powers, rights, and privileges were suspended on December 3, 2013, by the California Franchise Tax Board for failure to remit taxes. A motions panel denied the motion after reviewing Global Automotive's opposition thereto, which included a Certificate of Revivor that resulted in reinstatement of Global Automotive's corporate rights, even to the extent of validating otherwise invalid prior proceedings.

[3] The excerpts of the record on appeal consist primarily of argument and incomplete excerpts of testimony taken outside this adversary proceeding. To facilitate our analysis and disposition of this appeal, we have drawn some of our facts from items referenced in the bankruptcy court's case docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989) (appellate court may take judicial notice of the record in the underlying bankruptcy case).

compensation; his income in both 2010 and 2011 consisted solely of unemployment benefits.  The chapter 7 trustee filed a no distribution report in May 2012.

Global Automotive, assignee of the two judgments against Salehi, examined him under Rule 2004 and thereafter filed a timely complaint seeking denial of his discharge pursuant to § 727(a)(3), (a)(4), and (a)(5).  The complaint, which is barely three pages long, contains three, 2-sentence, substantive paragraphs:

- Paragraph 7 first paraphrases § 727(a)(3), which bars discharge based on the failure to keep or preserve recorded information regarding debtor's financial condition or business transactions, and then states:  "Specifically, notwithstanding a Bankruptcy Rule 2004 subpoena and related examination on June 5, 2012, the Debtor did not and could not produce numerous financial and business records." Adv. ECF #1 at 2:11-13.

- Paragraph 8 first paraphrases § 727(a)(5), which bars discharge where a debtor fails to explain a loss of assets, and then states: "For instance, the Debtor cannot satisfactorily explain, and had few or no records to indicate, how and where tens of thousands of dollars of proceeds of automobiles owned by Debtor's corporation, Fulton Auto Depot, Inc. dba Sacramento Auto Plaza ("SAP") were expended."  Id. at 2:15-18.

- In Paragraph 9, Global Automotive generally alleges that Salehi's testimony at the Rule 2004 examination contained false oath(s) or accounts within the meaning of

- 3 -

§ 727(a)(4)(A), and then states: "Specifically, the Debtor testified falsely at his 2004 examination regarding the disposition of money and property of SAP and the proceeds thereof." Id. at 2:21-23.

Salehi answered the complaint, generally denying the allegations in paragraphs 7, 8, and 9. Thereafter, Global Automotive filed a Motion for Summary Judgment ("MSJ") nominally on all three of the alleged statutory grounds for denial of discharge set forth in the complaint.

In the MSJ, Global Automotive asserted that Salehi produced virtually no documents at the Rule 2004 examination and admitted that he kept no financial records. It also asserted that Salehi demonstrated conclusively that he had no documents or records of a car dealership that he owned with his brother in 2009 and he failed to explain and produce records of the "hundreds of thousands of dollars" that Global Automotive alleged Salehi used in 2010 for start up of a dealership with Omar Casas called Coast to Coast. Global Automotive, however, did not specifically argue or identify prepetition assets that Salehi personally owned for which he failed to account. It also asserted, as fact, that Salehi committed perjury: (1) by not disclosing in his schedules money and income that he must have had to be able to invest in the new dealership and to pay his own living expenses; and (2) at his Rule 2004 examination as to the disposition of hundreds of thousands of dollars from liquidation in 2009 of vehicles owned by a prior dealership.

Global Automotive supported the MSJ with its attorney's declaration ("Counsel's Declaration") and a Separate Statement of

- 4 -

Undisputed Facts.  Exhibits to Counsel's Declaration consisted of: (1) a copy of a subpoena to Salehi for the Rule 2004 examination with a document request; (2) excerpts of Salehi's Rule 2004 examination testimony; (3) excerpts of the November 30, 2011 deposition of Silva M. Maadarani (Salehi's ex-spouse) in case no. 34-2008-00009041 titled Tanl Investment Group, Inc. v. Fulton Auto Depot, LLC, et al. in California Superior Court in Sacramento County ("2008 State Court Action"); (4) a copy of a subpoena to The Golden 1 Credit Union for business records in case number 34-2010-00091338 in Superior Court in Sacramento County ("2010 State Court Action"), titled Global Automotive, Inc. and TANL Investment Group, Inc. v. Anosheh Satvat, et al. ("Credit Union Subpoena"); and (5) copies of six checks produced in response to the Credit Union Subpoena, none of which was issued to or remitted by Salehi.

In its Separate Statement of Undisputed Facts, Global Automotive listed six paragraphs of "Undisputed Facts," supported solely by Counsel's Declaration.  Two paragraphs consist of the following:  "[Salehi] produced almost no documents at all [at the Rule 2004 examination]" (Adv. ECF #21 at 1); and "[Salehi] hid the proceeds of the SAP vehicles in his mother's deposit account, which proceeds were then used for the Coast to Coast dealership." Adv. ECF #21 at 2.  Global Automotive phrased the balance of undisputed facts as "claims" made by Salehi, apparently during the Rule 2004 examination:

> [Salehi] [ ] claimed he had no documents pertaining to the disposition of about 60 or so automobiles owned by Fulton Auto Depot, Inc. dba Sacramento Auto Plaza ("SAP"), a car dealership he owned with his brother.

- 5 -

> [He] claimed not to know where any of the records of SAP were located.
>
> [He] claimed to have no banking records whatsoever.
>
> [He] claimed to be "borrowing" funds for living expenses, but refused to state the name of the lender.
>
> [He] claimed to have provided no capital to a dealership by the name of Coast to Coast with which he was working.

Id.

Salehi opposed the MSJ and filed his declaration,[4] but he did not file a responsive statement of undisputed facts. He included a list of documents that he testified he provided (through his now-deceased prior counsel) before the Rule 2004 examination. He argued that these documents were sufficient, considering that he had not been a part of the business at issue for six years – since October 31, 2006. He declared that he had no additional documents for Sacramento Auto Plaza because a third party, Amir Razavi, was the business manager and responsible for maintaining the records. He further argues that he was merely the sales manager, although he omits this assertion from his sworn statement. Moreover, Salehi testified that his brother oversaw Salehi's business during 2008 and 2009, when Salehi himself was in an immigration detention center.

Salehi stated that he had answered questions to the best of his ability at the Rule 2004 examination and did not commit perjury. He argued further that he produced documents at the

---

[4] Salehi was represented by counsel when he filed his answer, however, his counsel passed away prior to Global Automotive's filing of its MSJ. Salehi's new counsel substituted into the adversary proceeding shortly after filing Salehi's documents in response to the MSJ.

Rule 2004 examination and that this created a genuine dispute as to a material fact. Salehi did not specifically address the § 727(a)(5) claim in his opposition, but Global Automotive, similarly, did not include § 727(a)(5) assertions in the MSJ itself.

The bankruptcy court held a hearing on the MSJ. Only counsel for Global Automotive appeared. In its Disposition After Oral Argument (formerly its Tentative Ruling), the bankruptcy court granted summary judgment on the § 727(a)(3) and (a)(5) claims, but denied it as to the § 727(a)(4)(A) claim.[5]

The bankruptcy court found it to be undisputed that Salehi failed to produce "business records pertaining to the disposition of approximately sixty (60) automobiles owned by Fulton Auto Depot Inc., dba Sacramento Auto Plaza ("SAP"), a corporation [Salehi] owned with his brother and failed to produce his own personal banking records." Civil Minutes (Feb. 19, 2013) (Adv. ECF #34). It found that Salehi admitted he "did not have the requested documents and did not know where to locate such documents, and offered no justification for his failure to keep and preserve such documents and records." Id.

The bankruptcy court cited the following as evidence of undisputed facts: Salehi's testimony under oath that he did not contribute capital to Coast to Coast Motors; the deposition testimony of Salehi's ex-spouse in the 2008 State Court Action that proceeds of automobiles sold by Sacramento Auto Plaza were

---

[5] The record does not contain a transcript of the MSJ hearing. The bankruptcy court docketed the Disposition After Oral Argument as its Civil Minutes of the hearing.

transferred to Salehi's mother's account(s) and later used by Salehi to purchase inventory to be sold by Coast to Coast Motors; a copy of a cashier's check purchased by Sacramento Auto Plaza and made payable to Salehi's mother, Anosheh Satvat[6]; and copies of checks from The Golden 1 Credit Union remitted by Salehi's mother to Coast to Coast Motors.

Specifically as to § 727(a)(3), the bankruptcy court found the evidence showed that Salehi:  was "a co-owner in a business that maintained substantial assets"; "failed to preserve any records related to the business"; and "failed to keep or preserve his own personal banking account information."  Id.

As to § 727(a)(5), the bankruptcy court found that Salehi "failed to satisfactorily explain the disposition of the proceeds of the sale of vehicles by SAP" and that Salehi caused such proceeds "to be transferred to Anosheh Satvat and then to Coast to Coast Motors for his own personal purposes."  Id.

The bankruptcy court determined that it could not rule in Global Automotive's favor on the § 727(a)(4)(A) claim, because the testimony as to whether Salehi knowingly and fraudulently made a false oath or statement was in conflict.  The bankruptcy court recognized that Salehi's testimony regarding the "disposition of proceeds from the sale of vehicles by SAP conflict[ed] with the testimony of his ex-spouse Silva Maadarani."  Id.

Thereafter, Global Automotive obtained approval to amend its

---

[6] Global Automotive's counsel and Salehi's ex-wife provided declaratory and deposition testimony, respectively, that Anosheh Satvat is Salehi's mother; a fact not disputed by Salehi.

complaint to omit its claim under § 727(a)(4)(A) and amended the complaint accordingly. The bankruptcy court then entered a judgment denying Salehi's discharge under § 727(a)(3) and (a)(5) on March 25, 2013, and Salehi timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court err when it granted summary judgment and denied Salehi's discharge under § 727(a)(5)?

2. Did the bankruptcy court err when it granted summary judgment and denied Salehi's discharge under § 727(a)(3)?

**STANDARD OF REVIEW**

We review a summary judgment de novo. <u>Bamonte v. City of Mesa</u>, 598 F.3d 1217, 1220 (9th Cir. 2010). De novo review requires that we consider a matter afresh, as if no decision had been rendered previously. <u>United States v. Silverman</u>, 861 F.2d 571, 576 (9th Cir. 1988); <u>B-Real, LLC v. Chaussee (In re Chaussee)</u>, 399 B.R. 225, 229 (9th Cir. BAP 2008). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine disputes of material fact that remain for trial and whether the prevailing party is entitled to judgment as a matter of law. <u>New Falls Corp. v. Boyajian (In re Boyajian)</u>, 367 B.R. 138, 141 (9th Cir. BAP 2007).

**DISCUSSION**

"[A] party seeking summary judgment always bears the initial

- 9 -

responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

A claim for denial of a discharge under § 727 is construed liberally in favor of the discharge and strictly against the objector. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). A creditor who asks the court to deny a debtor a discharge bears the burden of proving each of the elements of the applicable provision. Id. Thus, our review here is necessarily technical and focuses on whether Global Automotive presented undisputed evidence as to each element of each of its claims for denial of discharge.[7] Both in its papers and at oral argument Global Automotive argued very broadly and, in so doing, failed to carry its heavy burden on summary judgment.

**A. Global Automotive failed to argue or support denial of Salehi's discharge under § 727(a)(5).**

Section 727(a)(5) provides that the court shall grant the

---

[7] At oral argument, Global Automotive's counsel argued that Salehi's failure to comply with a Local Bankruptcy Rule that required him to file a responsive statement of undisputed facts must be viewed as conceding the lack of disputed facts. We disagree. Even a complete lack of opposition to a motion for summary judgment does not relieve the moving party of its obligation to meet its burden of showing entitlement to judgment as a matter of law. See North Slope Borough v. Rogstad (In re Rogstad), 126 F.3d 1224, 1227 (9th Cir. 1997) (it is error to grant summary judgment simply because the opponent failed to oppose).

debtor a discharge, unless – "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; . . . ." The objector must first prove a disappearance of substantial assets, then the burden shifts to the debtor to explain. Kistler v. Fader (In re Fader), 414 B.R. 640, 645 (Bankr. N.D. Cal 2009) (citing Chalik v. Moorfield (In re Chalik), 748 F.2d 616 (11th Cir. 1984)).

Here, Global Automotive alleged in its complaint that Salehi failed to explain "where tens of thousands of dollars of proceeds of automobiles owned by [Salehi's] corporation, Fulton Auto Depot, Inc. dba Sacramento Auto Plaza ('SAP') were expended." Adv. ECF #1 at 2. In its MSJ, however, Global Automotive does not pursue relief based on this allegation. In fact, the MSJ contains no specific argument directed to denial of discharge under § 727(a)(5); it merely recites § 727(a)(5) as grounds for relief.

On appeal, Salehi argues that Global Automotive made no evidentiary showing that Salehi controlled any funds or transferred them to his mother and, thus, failed to carry its burden on summary judgment.[8] Global Automotive argues in response that Salehi's failure to dispute the request for relief under § 727(a)(5) in his opposition to the MSJ bars Salehi's argument against such relief on appeal. We disagree. As Global

_____

[8] Salehi also argues on appeal that all the checks offered by Global Automotive were generated during the period of time that Salehi was in immigration detention. As Global Automotive points out in its Responsive Brief on appeal, this argument is not supported by the record. We, thus, do not consider it in our analysis.

Automotive failed to specifically address § 727(a)(5) in its MSJ, Salehi had no obligation to respond. And even absent opposition, Global Automotive failed to carry its burden on summary judgment. See North Slope, 126 F.3d at 1227. Global Automotive was required to clearly identify the elements required to establish its claim under § 727(a)(5) and to tie each to the evidence. The record shows that it did not do so.

As a threshold issue under § 727(a)(5), Global Automotive failed to argue or establish that "debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets." See In re Retz, 606 F.3d at 1205 (quoting Olympic Coast Invest., Inc. v. Wright (In re Wright), 364 B.R. 51, 79 (Bankr. D. Mont. 2007)). Global Automotive's submission of a copy of a cashier's check remitted by Fulton Auto Depot, Inc. in 2009 and made payable to Anosheh Satvat's account and copies of checks issued out of Anosheh Satvat's account to Coast to Coast in 2010, on their face, fail to establish that any funds represented thereby were either Salehi's assets or assets controlled by Salehi. Global Automotive offered nothing else to support such an argument or finding.

Global Automotive generally asserted that Salehi held an ownership interest in Fulton Auto Depot, Inc. dba Sacramento Auto Plaza with his brother. And Global Automotive's counsel argued that Salehi failed to produce records relating to the dispositions of "60 or so" Sacramento Auto Plaza vehicles, thus implying that Salehi was somehow responsible for their disposition. None of the cited excerpts from Salehi's Rule 2004 examination testimony, however, support this implication; and

- 12 -

Global Automotive fails to argue when such dispositions allegedly occurred. Salehi provided declaratory evidence that he had not been a partner in Sacramento Auto Plaza[9] for six years; that is since 2006. The existence and disposition of "60 or so" vehicles (at some unknown point in time) are not established by the mere statements of counsel, even when echoed in Global Automotive's Separate Statement of Undisputed Facts. As to timing, which was not addressed in the MSJ, Salehi testified at his Rule 2004 examination that he was subject to immigration detention for a period of time and, thus, was incapable of active involvement in vehicle sales. In his declaration he testified that his detention was in 2008 and 2009. He was released in April 2009, three months before Sacramento Auto Plaza ceased business entirely, which, significantly, was three years before Salehi filed bankruptcy. Thus, Global Automotive fails to establish an absence of disputed material facts: the existence of substantial assets not too remote in time from the 2012 petition date.

Nor can we discern from the record that Salehi himself ever owned or disposed of "60 or so" vehicles at any point in time. Salehi's bankruptcy schedules, filed under penalty of perjury, disclose that his sole source of income in the two years pre-

[9] The offered evidence and argument made by both sides regarding Sacramento Auto Plaza itself are ambiguous at best. It appears possible that the dba was initially used by either a partnership or a limited liability company and later by a corporate entity. Neither side presented evidence of the ownership or structure to resolve this ambiguity. And other than Salehi's testimony that Sacramento Auto Plaza ceased business in July 2009, Global Automotive presented no evidence to provide any temporal reference points in connection with the alleged disposition of "60 or so" automobiles. And it bears repeating, Global Automotive presented no evidence of any specific vehicles, much less "60 or so" vehicles.

filing was unemployment benefits. The excerpts of Salehi's Rule 2004 examination testimony are consistent on this point. He testified that Sacramento Auto Plaza closed down in July 2009, nearly three years before he filed bankruptcy, and that he had no idea what happened to proceeds of any vehicles from Sacramento Auto Plaza.

The bankruptcy court found, in connection with its grant of summary judgment under § 727(a)(5), that Salehi caused the proceeds of the sale of vehicles "to be transferred to Anosheh Satvat and then to Coast to Coast Motors for his own personal purposes." Civil Minutes (Feb. 19, 2013) at 2. To make this finding the bankruptcy court necessarily had to determine that Salehi's testimony to the contrary was not credible and, instead, give credit to Salehi's ex-spouse's testimony.[10] In addition, the bankruptcy court had to make an adverse inference based on Global Automotive's unsupported argument, that Salehi controlled both Sacramento Auto Plaza and Coast to Coast Motors. Both the credibility determination and the adverse inference were inappropriately made on summary judgment.[11] See Oswalt v. Resolute Indus., 642 F.3d 856, 861 (9th Cir. 2011) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the

---

[10] The bankruptcy court found the testimony in connection with Global Automotive's § 727(a)(4)(A) claim in conflict, thus requiring denial of summary judgment. This conflicting testimony likewise failed to support summary judgment under § 727(a)(5).

[11] The scant evidence submitted by Global Automotive was open to possible evidentiary objections; Salehi, however, did not make any and we do not consider evidentiary objections that were not preserved.

summary judgment stage.") (internal citation omitted).  Thus, the bankruptcy court erred – Global Automotive was not entitled to summary judgment under § 727(a)(5) – and we must reverse.

**B.   The bankruptcy court erred by granting summary judgment to Global Automotive under § 727(a)(3).**

Section 727(a)(3) provides, in relevant part, that a debtor is not entitled to a discharge if he fails "to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  To succeed on its objection to discharge under § 727(a)(3), Global Automotive must show "'(1) that [Salehi] failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain [Salehi's] financial condition and material business transactions.'" Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994) (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3d Cir. 1992)).  Adequate records should enable creditors to follow a debtor's transactions "for a reasonable period in the past." Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008)(quoting Rhoades v. Wikle, 453 F.2d 51, 53 (9th Cir. 1971)).

Here, Global Automotive argued that Salehi admitted that he kept no financial records and failed to maintain records for Sacramento Auto Plaza.  It also argued that Salehi could not produce records pertaining to his investment in 2010 in the Coast to Coast dealership.  To find in Global Automotive's favor on

- 15 -

these points would require us to accept counsel's argument as fact and make inferences and credibility determinations in Global Automotive's favor – none of which is appropriate on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (all justifiable inferences must be drawn in favor of the non-moving party); Oswalt v. Resolute Indus., 642 F.3d at 861 (credibility determinations, weighing of evidence, and the drawing of legitimate inferences from the facts are inappropriate on summary judgment); and British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) ("Legal memoranda and oral argument are not evidence"). And, the nonmovant's "evidence is to be believed." McSherry v. City of Long Beach, 584 F.3d 1129, 1133 (9th Cir. 2009).

**1. Sacramento Auto Plaza business records**

During Salehi's Rule 2004 examination, he testified that he did not know the location of business records for Sacramento Auto Plaza. Global Automotive implicitly argues that Salehi not only should know where the records were, presumably based on his alleged ownership interest in Sacramento Auto Plaza, but that he should have produced them in advance of the Rule 2004 examination; and, it then asserts that, having failed on both accounts, he should not be entitled to a discharge.

First, as discussed above, Global Automotive failed to establish that Salehi recently held any ownership interest in Sacramento Auto Plaza entitling him to access to, or responsibility for, Sacramento Auto Plaza's business records. Second, the only evidence in the record reflects that Sacramento Auto Plaza ceased operating nearly three years before Salehi

filed bankruptcy. Third, Salehi testified at his Rule 2004 examination that "Amir was in charge for all that stuff, . . . ." Depo. Tr. (June 5, 2012) at 26:22-24 (Adv. ECF #20). And in his declaration in opposition to the MSJ, Salehi expanded on this point when he testified that Amir Razavi "made and maintained all business records for Sacramento Auto Plaza." Adv. ECF #28 at 2:10-11. Global Automotive offered only excerpts of Salehi's Rule 2004 examination testimony as evidence on these points; and as the non-moving party on summary judgment, Salehi was entitled to have his evidence and Rule 2004 examination testimony believed.

Global Automotive next argues that Salehi's argument regarding control of Sacramento Auto Plaza's documents conflicted with Salehi's Rule 2004 examination testimony that he did not know where Sacramento Auto Plaza's business documents were. We disagree. In Salehi's Rule 2004 examination testimony he stated that he did not know what happened to the records and that Amir Razavi was in charge of the business records. Salehi's statements were not facially inconsistent. Thus, Global Automotive did not establish the absence of a genuine dispute of material fact necessary to support judgment under § 727(a)(3) based on a lack of business records for Sacramento Auto Plaza.

**2. Coast to Coast automobile dealership records**

Global Automotive argued on summary judgment that Salehi's discharge should be denied because Salehi lacked records regarding funds he allegedly used in 2010 to start Coast to Coast. Global Automotive's evidence consisted solely of Salehi's Rule 2004 examination testimony and Salehi's ex-wife's deposition

testimony in the 2008 State Court Action.

Salehi's testimony was that at some point prepetition he tried to help his friend Omar Casas open a car dealership in Sacramento called Coast to Coast. He testified that he contributed no capital and no vehicles; he only contributed his knowledge to the effort. Coast to Coast itself lasted only a couple of months.

Salehi's ex-wife testified to the contrary, based on conversations in Farsi that she overheard. She also testified, however, that she is Lebanese, did not speak Farsi, but had taken some classes. From such overheard conversations, she testified that she found out that Salehi put some money in his mother's account from the sale of Sacramento Auto Plaza vehicles and then used the funds to help buy cars for Coast to Coast. And she finally testified that she believed the money went back into Salehi's mother's account, when Coast to Coast failed, because: "[w]here else would it go." Depo. Tr. (November 30, 2011) at 34:9 (Adv. ECF #20).

The conflicting testimony excerpts presented by Global Automotive cannot serve as the basis for summary judgment. Determination of the facts required assessment of the witnesses' credibility, which, as already stated, is inappropriate on summary judgment. Therefore, the bankruptcy court erred in determining the absence of a genuine dispute as required to support judgment under § 727(a)(3) based on lack of records for Coast to Coast.

**3. Debtor's personal financial records**

Global Automotive also argued that Salehi should be denied

his discharge because he produced no personal banking records for his Rule 2004 examination and admitted to keeping no records. It is undisputed that Salehi was unemployed when he filed bankruptcy and had been unemployed the two years prior to filing. Global Automotive argued in its MSJ, however, that it was implausible that Salehi could have no income for over a year but still pay personal expenses, and implicitly that Salehi, thus, must have banking records.

Again, the only evidence offered by Global Automotive consists of Salehi's Rule 2004 examination testimony in which he testified that he went to Bank of America to obtain his bank statement, obtained a copy of it, but did not bring it to the Rule 2004 examination because it was negative for the prior two to three years. He also testified that he had a second account at Bank of America that was set up for direct deposit of his unemployment benefits, accessible with an ATM card. He alleged, however, that he never received any written statements on either account and did not write checks. He also testified that he either paid cash on his few monthly bills, like his cell phone, or paid using a friend's credit card and that he lived with his parents.

A debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." In re Caneva, 550 F.3d at 761. A debtor's "duty to keep records is measured by what is necessary to ascertain [his] financial status." Moffett v. Union Bank, 378 F.2d 10, 11 (9th Cir. 1967); see also United

States Tr. v. Hong Minh Tran (In re Hong Minh Tran), 464 B.R. 885, 893 (Bankr. S.D. Cal. 2012) (type of debtor, as well as debtor's sophistication, informs the bankruptcy court's determination).  Here, Global Automotive does not argue that Salehi had no banking records.  Instead, it implicitly argues that Salehi had no hard copies of bank records or, at best, that he failed to produce any at his Rule 2004 examination.  Salehi's undisputed testimony, if believed (as it must be on summary judgment), is consistent with electronic access to paperless accounts, one set up for automatic deposit of unemployment benefit payments, and the foregoing of paper records in this era of electronic accessibility.

Moreover, failure to produce documents in response to a discovery request, alone, does not justify denial of discharge under § 727(a)(3).  Global Automotive could have obtained written copies of Salehi's bank records through formal discovery in the adversary proceeding if it was not satisfied with what Salehi produced in response to his Rule 2004 examination.

Drawing justifiable inferences in favor of Salehi, which we must on summary judgment, and construing evidence liberally in favor of the discharge, we determine that the bankruptcy court erred when it granted summary judgment in favor of Global Automotive under § 727(a)(3) based on an alleged lack of personal financial records.

**CONCLUSION**

Based on the foregoing, we REVERSE the bankruptcy court's grant of summary judgment.