

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>FINNIAN OSAKPAMWAN EBUEHI<br>and ELIZABETH OLOHIRERE EBUEHI,<br>Debtors. | BAP No. CC-21-1199-FLT<br><br>Bk. No. 2:18-bk-20704-NB<br><br>Adv. No. 2:20-ap-01633-NB |
| FINNIAN OSAKPAMWAN EBUEHI;<br>ELIZABETH OLOHIRERE EBUEHI,<br>Appellants,<br>v.<br>UNITED STATES TRUSTEE, LOS<br>ANGELES,<br>Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Neil W. Bason, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Finnian Osakpamwan Ebuehi and Elizabeth

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Olohirere Ebuehi appeal the bankruptcy court's judgment after trial denying their discharge under §§ 727(a)(3), (a)(4), and (a)(6). We AFFIRM.

## FACTS

### A.     The Ebuehis' chapter 11 bankruptcy case

The Ebuehis filed a joint chapter 11 petition and scheduled real property including their residence (known as the "Gladstone Property") and three rental properties. They reported over $5,000 of monthly income from the rental properties.

A year into their case, one of the Ebuehis' creditors accused them of failing to pay creditors and misdirecting rental income. The bankruptcy court issued an order to show cause why the case should not be converted to one under chapter 7 or a trustee should not be appointed. The Ebuehis did not file a written response, but their counsel appeared at the hearing and requested a continuance. The court denied their request and converted the case to chapter 7. The October 18, 2019 order ("Conversion Order") directed the Ebuehis to: (1) file a schedule of unpaid debts; (2) transmit a final report and account to the United States Trustee; (3) immediately turn over all records and property of the estate to the chapter 7 trustee; (4) file all applicable statements and schedules; and (5) file a statement of intention regarding retention or surrender of property.

The certificate of notice indicated that the Conversion Order was electronically served on the Ebuehis' counsel on the same day. It also indicated that the Bankruptcy Noticing Center ("BNC") sent the

2

Conversion Order to the Ebuehis via first class mail on October 20.

The Ebuehis filed a motion for reconsideration on November 1, 2019. In their signed declaration, the Ebuehis acknowledged that the Conversion Order "essentially" granted the motion and converted their case to chapter 7. The court denied that motion and a subsequent reconsideration motion.

The Ebuehis did not comply with the Conversion Order. They appealed to this Panel, but we dismissed the appeal for lack of prosecution.

## B.    The Ebuehis' converted chapter 7 case

Meanwhile, the bankruptcy court appointed Peter J. Mastan as the chapter 7 trustee in the Ebuehis' converted case. He directed the Ebuehis to vacate the Gladstone Property so that he could remediate numerous unsightly conditions and market the property for sale, but they refused.

### 1.    The turnover motion

The chapter 7 trustee filed a motion to compel the Ebuehis to vacate the Gladstone Property and turn over the property under § 542. He requested that the bankruptcy court order them to vacate the property and remove all personal property within two business days.

The Ebuehis did not oppose the turnover motion or appear at the hearing. After the court heard and orally granted the motion, they filed a brief opposition arguing that it would be burdensome to move out of the Gladstone Property. On April 2, 2020, the court entered a written order requiring the Ebuehis to vacate the property within two business days (the "Turnover Order").

The certificate of notice indicated that the Turnover Order was electronically served on the Ebuehis' counsel on the same day. It also indicated that the BNC sent the Turnover Order to the Ebuehis via first class mail on April 4. Nevertheless, the Ebuehis did not vacate the Gladstone Property.

### 2. The order to show cause

The chapter 7 trustee filed a motion for an order to show cause why the Ebuehis should not be held in contempt for ignoring the Turnover Order, frustrating the sale process, and failing to vacate the Gladstone Property. The Ebuehis opposed the motion. They argued that they had nothing to do with the difficult administration of the chapter 7 case.

The bankruptcy court granted the motion and issued the order to show cause. The Ebuehis filed a response but again insisted that they had done nothing wrong.

The bankruptcy court held a hearing on the order to show cause (which the Ebuehis and their counsel attended) and found the Ebuehis in contempt of the Turnover Order. It issued an order ("Contempt Order") that held that they had willfully failed to comply with the Turnover Order and failed to establish that compliance was impossible. It also ordered coercive monetary sanctions against the debtors.

In making its ruling, the bankruptcy court adopted its tentative ruling in full. It noted "a number of excuses for their non-compliance, but their evidence does not substantiate their claims and contains too many

4

gaps for this Court to find that they have adequately rebutted the Trustee's evidence that they are willingly flouting this Court's Turnover Order." The court rejected each of the Ebuehis' excuses for noncompliance.

In or around June 2020, the Ebuehis vacated the Gladstone Property.

## C. The adversary proceeding

The chapter 7 trustee filed an adversary complaint to deny the Ebuehis their discharge under §§ 727(a)(3), (a)(4), and (a)(6).

In the first and second causes of action, he asserted that denial of discharge under § 727(a)(6) was warranted because the Ebuehis had failed to comply with the Conversion Order and Turnover Order, respectively.

In the third cause of action, he objected to discharge under § 727(a)(4) because the debtors made a false oath regarding the number of missed mortgage payments: they reported that they had missed only four payments when they in fact had missed eleven payments.

Finally, in the fourth cause of action, he urged the court to deny discharge under § 727(a)(3) because the debtors failed to maintain records regarding the rental payments or turn over their record-keeping notebook, making it impossible to ascertain their financial condition.

The United States Trustee intervened and assumed prosecution of the adversary proceeding.

Prior to trial, the parties agreed to stipulated facts and legal issues. With regard to the Conversion Order, the parties stipulated that the Ebuehis did not file certain required reports. They also stipulated that the

5

August 2019 monthly operating report represented that the debtors had missed four mortgage payments, but the lender reported that they had missed eleven payments. The parties stipulated that the Ebuehis had failed to respond to the U.S. Trustee's requests for admission, which included assertions that they did not disclose accurate information in their schedules; have no written records concerning the rental properties; did not provide or file required reports or schedules; and did not make mortgage payments between October 2018 and August 2019.

**D.    Trial**

At trial, the U.S. Trustee offered evidence to support the allegations of the complaint.

The Ebuehis conceded that the information in the monthly operating reports was incorrect but argued that the mistake was unintentional because they did not receive statements from the mortgage lender. They said that Mr. Ebuehi completed the August 2019 monthly operating report without Mrs. Ebuehi's input and that she signed it without reading it.

They stated that they had no knowledge of the Conversion Order because their attorney did not inform them of the conversion and they did not receive a copy of the order. They claimed that they only found out about the Conversion Order when they attended a § 341 meeting in December 2019 (or when they were informed by a paralegal). Similarly, they asserted that they did not have knowledge of the Turnover Order, so they could not comply with its terms.

6

As to the rental proceeds, they stated that they kept information in a book, but they could not find it. They said that they had cooperated with the chapter 7 trustee and that he could have gotten the necessary information from their tenants.

At the conclusion of the trial, the bankruptcy court orally announced its ruling. It denied Mr. Ebuehi his discharge under §§ 727(a)(3), (a)(4), and (a)(6) and denied Mrs. Ebuehi her discharge under §§ 727(a)(3) and (a)(6). It recognized that objections to discharge must be construed strictly against the objector but nevertheless found that "the plaintiff's evidence in this case is very strong, and the arguments are very strong." It stated that, as a general proposition, it did not find the Ebuehis credible.

The bankruptcy court held that it had already ruled in the contempt proceedings that the Ebuehis had willfully failed to comply with the Turnover Order and determined that issue preclusion prevented relitigation of the § 727(a)(6) claim. Alternatively, it held that the U.S. Trustee had established that the Ebuehis should be denied their discharge under § 727(a)(6) because the Ebuehis were aware of the Conversion Order and Turnover Order yet chose to ignore them. It rejected the Ebuehis' argument that their noncompliance should be excused, instead finding that the debtors were derelict for putting their "head[s] in the sand." It did not credit the Ebuehis' testimony that they lacked receipt of and knowledge about the content of the Conversion Order and Turnover Order. It found that they had filed documents that acknowledged the orders and took

7

judicial notice of its docket reflecting that BNC had mailed the Conversion Order and the Turnover Order to the Ebuehis' mailing address.

As to § 727(a)(3), the bankruptcy court held that the Ebuehis' failure to turn over financial records made it impossible for the chapter 7 trustee to ascertain their financial condition. It found the Ebuehis not credible regarding the missing records and rejected the argument that the chapter 7 trustee could have obtained the same information from the tenants.

As to § 727(a)(4), the bankruptcy court held that Mr. Ebuehi knowingly and fraudulently reported that they had missed only four mortgage payments. However, there was no evidence that Mrs. Ebuehi had prepared or reviewed the monthly operating reports before signing them.

The bankruptcy court entered judgment against the Ebuehis. The Ebuehis timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in denying the Ebuehis their discharge under § 727(a)(3).

(2) Whether the bankruptcy court erred in denying Mr. Ebuehi his discharge under § 727(a)(4).

(3) Whether the bankruptcy court erred in denying the Ebuehis their discharge under § 727(a)(6).

8

## STANDARDS OF REVIEW

In an appeal from a § 727 denial of discharge: (1) the bankruptcy court's determinations of the historical facts are reviewed for clear error; (2) the court's selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the court's application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We give especially great deference to the bankruptcy court's determinations of witnesses' credibility. An appellate court must "give singular deference to a trial court's judgments about the credibility of witnesses. That is proper, we have explained, because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (citations omitted). An attack

9

on credibility determinations rarely succeeds, because "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575.

## DISCUSSION

Section 727(a) provides in relevant part that the bankruptcy court may deny a debtor a discharge if the debtor has engaged in certain kinds of misconduct.

The party objecting to discharge "bears the burden of proving by a preponderance of the evidence that [the debtor's] discharge should be denied. . . . [D]ischarge provisions are liberally construed in favor of debtors and strictly against the person objecting to the discharge." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167, 1168 (9th Cir. 2009).

**A. The bankruptcy court did not err in denying the Ebuehis their discharge under § 727(a)(3).**

The Ebuehis argue that the bankruptcy court erred in denying their discharge under § 727(a)(3) because their records were not necessary to determine their financial status and they were justified in failing to turn them over. We disagree.

Section 727(a)(3) provides that the bankruptcy court must deny a

discharge when the debtor has "concealed . . . or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . ." The Ninth Circuit has stated "that the purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (citing *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994)). The debtor is required to "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Id.* (quoting *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)). This "requirement removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'" *Id.* (quoting *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir. 1953)).

To assess the sufficiency of the debtor's records under § 727(a)(3), the bankruptcy court must engage in a two-part analysis. First, a creditor makes a prima facie case by showing "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* (quoting *In re Cox*, 41 F.3d at 1296). If the creditor meets his burden of showing inadequate or nonexistent records, "the

11

burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." *Id.* (quoting *In re Cox*, 41 F.3d at 1296).

In this case, the chapter 7 trustee testified that the Ebuehis gave him no accounting for their receipt or disposition of the rental payments. The Ebuehis do not deny this, but they argue that the trustee could have obtained the information from the tenants or their financial institutions. The premise of this argument is false: the chapter 7 trustee did ask the tenants about their rental payments and did examine bank records; unsurprisingly, the tenants knew what they had paid the Ebuehis, but did not know what the Ebuehis did with the rental payments, and the bank records revealed that the money was never deposited into the estate's accounts. The argument is also erroneous because the debtor has an affirmative duty to disclose his financial records, and it is not the trustee's responsibility to verify the account of an uncooperative debtor. *See In re Caneva*, 550 F.3d at 762; *see also Chen v. U.S. Tr. (In re Chen)*, BAP No. WW-17-1067-KuFB, 2017 WL 4768104, at *6 (9th Cir. BAP Oct. 17, 2017) ("Trustee was not required to investigate and acquire [debtor's] records. It was [debtor's] duty to keep and preserve records and provide sufficient information." (citations omitted)).

The burden thus shifted to the Ebuehis to establish that they were justified in their failure to produce their financial records. They contend that they were justified in not providing the information because they "lost" or "misplaced" the notebook containing the rental records, possibly

12

when they moved out of the Gladstone Property. But the bankruptcy court simply did not believe Mr. Ebuehi's testimony. This was not clear error. *See Cooper*, 137 S. Ct. at 1474; *Anderson*, 470 U.S. at 575.

Further, the Ebuehis argue that Mrs. Ebuehi was not involved in collecting rents or keeping financial records. But Mrs. Ebuehi is equally responsible for providing records to the chapter 7 trustee. In fact, she represented in their joint declaration that **they** had provided all information to the trustee. The fact that she did not collect the rents did not absolve her of her responsibility to cooperate with the trustee.[2] Moreover, the Ebuehis never raised this argument in the bankruptcy court. We will not entertain new arguments in the first instance on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

### B. The bankruptcy court did not err in denying Mr. Ebuehi his discharge under § 727(a)(4).

Mr. Ebuehi argues that the bankruptcy court erred in ruling that he knowingly and fraudulently made a false oath in the monthly operating reports. We discern no error.

Section 727(a)(4)(A) denies a discharge to a debtor who "knowingly

---

[2] The Ebuehis cite *Cox*, in which the Ninth Circuit held that a wife was entitled to a discharge where she relied on her husband's recordkeeping. However, in that case, the couple had a strict division of marital responsibilities, and the wife explicitly understood that she did not have to concern herself with her husband's business affairs. *In re Cox*, 41 F.3d at 1298. The Ninth Circuit held that, in such a case, the wife's failure to keep records was justified. *Id.* at 1299. Conversely, the Ebuehis did not even argue, let alone offer any evidence, that they had such a division of responsibility.

and fraudulently, in or in connection with the case[,] . . . made a false oath or account[.]" "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999).

The party objecting to discharge must show by a preponderance of the evidence that: (1) the debtor made such a false statement or omission (2) regarding a material fact, (3) he did so knowingly, and (4) he did so fraudulently. *See In re Retz*, 606 F.3d at 1197; *Searles*, 317 B.R. at 377.

The Ebuehis do not contest that Mr. Ebuehi misreported the number of missed mortgage payments in the monthly operating statements or that such facts were material. They only argue on appeal that the bankruptcy court erred in finding that he did so knowingly and fraudulently. "A finding of fraudulent intent is a finding of fact reviewed for clear error." *In re Retz*, 606 F.3d at 1197.

A debtor "acts knowingly if he or she acts deliberately and consciously." *In re Khalil*, 379 B.R. at 173 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 883 (9th Cir. BAP 2005)). A debtor acts with fraudulent intent when: (1) the debtor makes a misrepresentation, (2) that at the time he or she knew was false, and (3) with the intention and purpose of deceiving creditors. *In re Retz*, 606 F.3d at 1198-99.

The Ebuehis' primary argument on appeal is that Mr. Ebuehi did not knowingly or fraudulently misreport information because the mortgagee

14

did not provide them with a statement listing the missing payments, so they had no way of knowing how many payments they had missed. He faults the chapter 7 trustee and the U.S. Trustee's office for failing to contact him and request that he correct the mistakes.

The bankruptcy court did not err in finding that Mr. Ebuehi made the statements knowingly and fraudulently. His excuse makes no sense. He knew whether he made a mortgage payment, regardless of whether the mortgagee told him he had or had not done so. The bankruptcy court simply did not believe him. This was not error.

## C. The bankruptcy court did not err in denying the Ebuehis their discharge under § 727(a)(6).

The Ebuehis contend that the bankruptcy court erred in ruling that they failed to comply with court orders. Their arguments are unavailing.

Section 727(a)(6)(A) provides that the court shall grant a discharge unless "the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]" In order to establish that the debtors "refused" to comply with an order, the party seeking to deny discharge "must show that Debtors (1) were aware of the order and (2) willfully or intentionally refused to obey the order (i.e., something more than a mere failure to obey the order through inadvertence, mistake or inability to comply)." *Vaughan v. Weinstein (In re Vaughan)*, BAP No. NV-15-1254-JuKiD, 2016 WL 878308, at *7 (9th Cir. BAP Feb. 29, 2016).

15

The bankruptcy court held that the Ebuehis willfully failed to comply with both the Conversion Order and the Turnover Order. The court did not credit their testimony that they had no knowledge of the orders, either personally or from their counsel. It pointed out that the orders were served both electronically on their counsel and by mail on the debtors, that the Ebuehis did not complain about not receiving any other court document, that a paralegal informed them that their case had been converted, and that they filed a motion for reconsideration (including their signed declaration) that acknowledged the Conversion Order. The court found that the Ebuehis knew of the two orders and chose to ignore them. Even if the Ebuehis did not initially know about the orders, once they learned of them, they put their "head[s] in the sand" and chose not to comply. The bankruptcy court's credibility assessment and factual findings are not clearly erroneous.

The Ebuehis argue that the bankruptcy court should not have taken judicial notice of the BNC certificates of notice. But the bankruptcy court did not need to rely on the certificates of notice; the Ebuehis' testimony and their own court filings demonstrated that they knew of the Conversion Order and Turnover Order yet refused to comply.

They also seem to argue that, because the orders were not served on them with enough time to comply, they were not required to abide by the orders. This argument is nonsensical. By their logic, a party who flouts a deadline is absolved of any responsibility to comply with the court order

once that deadline has passed. *Cf. Maness v. Meyers*, 419 U.S. 449, 458-59 (1975) ("[A]ll orders and judgments of courts must be complied with promptly. . . . The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." (citation and quotation marks omitted)); *Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979) (A party "who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result."). The bankruptcy court did not err in requiring the Ebuehis to comply with (or at least make an effort to investigate) the court's orders once they learned of them.[3]

---

[3] The bankruptcy court alternatively held that its Contempt Order had issue preclusive effect over whether the Ebuehis willfully failed to comply with the Turnover Order. We think that the law of the case doctrine is more applicable to this situation. That doctrine grants a court discretion to decline "reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Rebel Oil Co. v. Atl. Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998). Orders entered in the main bankruptcy case are law of the case in adversary proceedings associated with that case. *See Rickert v. Specialized Loan Servicing, LLC (In re Rickert)*, BAP No. MT-20-1100-BGF, 2020 WL 7043609, at *4 (9th Cir. BAP Dec. 1, 2020) (applying law of the case where a subsequent order in an adversary proceeding involved "precise issues that the bankruptcy court previously decided, both explicitly and implicitly, in favor of [the appellee]. As such, these issues are barred by the doctrine of law of the case."), *aff'd*, No. 21-60003, 2021 WL 5985026 (9th Cir. Dec. 16, 2021). However, any error in relying on issue preclusion was harmless. The bankruptcy court correctly held that the elements of issue preclusion applied, and the law of the case test is less stringent than issue preclusion. *See generally Arizona v. California*, 460 U.S. 605, 618 (1983) (noting that,

17

**CONCLUSION**

The bankruptcy court did not err in denying the Ebuehis their discharge. We AFFIRM.

---

"[u]nlike the more precise requirements of res judicata, law of the case is an amorphous concept"), *decision supplemented*, 466 U.S. 144 (1984). More importantly, the court independently determined that denial of discharge was warranted under § 727(a)(6).