FILED

NOT FOR PUBLICATION

MAY 26 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. NC-19-1235-BTaF |
| | NC-19-1255-BTaF |
| ARTEM KOSHKALDA, | (Cross Appeals) |
| Debtor. | Bk. No. 18-30016-HLB |
| ARTEM KOSHKALDA, | Adv. No. 18-03020-HLB |
| Appellant/Cross-Appellee, | |
| v. | MEMORANDUM* |
| SEIKO EPSON CORPORATION; EPSON AMERICA, INC., | |
| Appellees/Cross-Appellants. | |

Argued and Submitted on March 26, 2020

Filed – May 26, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

---

\* This disposition is not appropriate for publication.  Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

---

Appearances: Appellant/Cross-Appellee Artem Koshkalda argued pro se; Henry S. David of The David Firm argued for Appellees/ Cross-Appellants Seiko Epson Corporation and Epson America, Inc.

---

Before: BRAND, TAYLOR, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant/Cross-Appellee Artem Koshkalda appeals a judgment granting partial summary judgment to Seiko Epson Corporation and Epson America, Inc. (together "Seiko Epson") on its objection to discharge claims under § 727(a)(2)(A),[1] (a)(3), and (a)(7), and denying Koshkalda's motion for summary judgment on those claims and others. Seiko Epson cross-appeals the court's ruling summarily denying its costs under Rule 7054(b).

We conclude that the bankruptcy court did not err in granting Seiko Epson's motion for partial summary judgment and denying Koshkalda's motion for summary judgment. However, the bankruptcy court should have allowed Seiko Epson an opportunity to submit a bill of costs before denying them. Accordingly, we AFFIRM in part, VACATE in part, and REMAND.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A.     The Nevada District Court litigation

Prior to his bankruptcy filing, Koshkalda was in the business of importing and selling ink cartridges and selling printers overseas. He also invested heavily in residential real estate, individually and through some of his many wholly-owned entities.

On September 8, 2016, Seiko Epson filed suit against Koshkalda, ART, LLC (his wholly-owned LLC), and others in the District of Nevada for trademark infringement and counterfeiting, unfair competition, and false advertising. In September and October 2016, Seiko Epson seized two laptops and business records from ART's offices in Reno, Nevada.

On July 31, 2017, the district court issued a temporary restraining order ("TRO"), freezing Koshkalda's and ART's assets and enjoining them from transferring, selling or otherwise disposing of any existing or acquired real or personal property, and from spending more than $3,000 per month without prior court approval. Koshkalda and ART were also prohibited from opening any new bank accounts. Koshkalda appeared at an August 3, 2017 hearing before the district court, where the TRO was addressed.

On August 7, 2017, the district court held a hearing on an Order to Show Cause on issuance of a preliminary injunction. None of the defendants appeared. The court orally granted the injunction, after finding that Seiko Epson had demonstrated a substantial likelihood of success on the merits and

that Koshkalda was dissipating and would continue to dissipate assets.

On August 22, 2017, the district court issued an Order for Asset Seizure and Impoundment, which froze the assets of Koshkalda and ART ("Freeze Order"). Koshkalda's emergency motions seeking relief from the Freeze Order to permit him and his companies to pay various obligations were denied.

When Koshkalda continued to violate the Freeze Order, the district court entered an order on October 27, 2017, finding him in contempt and ordering turnover of his and ART's assets to Seiko Epson. The court then entered an Amended Freeze Order (together with the TRO and Freeze Order, the "Freeze Orders"), in which it eliminated the $3,000 monthly spending allowance but otherwise retained substantially the same provisions as the Freeze Order.

Eventually, the district court struck Koshkalda's and ART's answers due to repeated discovery abuses and violations of court orders and entered their defaults. On January 16, 2018, it entered a $12 million default judgment against Koshkalda and ART. That decision was appealed to the Ninth Circuit Court of Appeals, which recently affirmed.

**B.      Postpetition events**

Koshkalda and ART filed chapter 11 bankruptcy cases in California on January 5, 2018.[2] Upon conversion to chapter 7, E. Lynn Schoenmann was

---

[2] The bankruptcy court later retroactively annulled the automatic stay to let the default judgment stand and to allow Koshkalda's and ART's appeal to proceed.

appointed as trustee in Koshkalda's case.

Seiko Epson filed a complaint objecting to Koshkalda's discharge under § 727(a)(2)(A), (a)(3), (a)(5), and (a)(7), and seeking to except the judgment from Koshkalda's discharge under separate fraudulent transfer and actual fraud theories under § 523(a)(2)(A) and under (a)(6). In total, Seiko Epson asserted seven claims.[3]

### 1.    The parties' cross-motions for summary judgment

Koshkalda moved for summary judgment on Seiko Epson's five unstayed claims for relief ("MSJ"). Seiko Epson opposed the MSJ and filed its own motion for partial summary judgment ("PSJ"), seeking relief on four of its five unstayed claims.

### Seiko Epson's claim under § 727(a)(2)(A)/(a)(7) and fraudulent transfer claim under § 523(a)(2)(A)

In support of these claims, Seiko Epson submitted undisputed evidence that Koshkalda had sold property, opened new bank accounts, obtained loans, encumbered his assets, made charges to his credit cards and spent more than $3,000 per month, all of which Seiko Epson argued violated the Freeze Orders. In particular, on August 10, 2017, one week after he admittedly knew about the TRO, Koshkalda, on behalf of Renoca, LLC (his

---

[3] After the complaint was filed, the bankruptcy court stayed Seiko Epson's claim for actual fraud under § 523(a)(2)(A) and its § 523(a)(6) claim, pending resolution of the appeal of the Nevada judgment. Prosecution of the § 523(a)(2)(A) fraudulent transfer claim and the § 727 claims continued.

wholly-owned LLC), sold what is known as the Giacomo Property, and deposited the $380,506.48 in sale proceeds into a new bank account, which he had opened two days prior on August 8, 2017. On August 11, 2017, Koshkalda transferred $308,119.84 of the deposited sale proceeds to third parties.

As direct evidence of his intent to hinder, delay or defraud Seiko Epson, Seiko Epson offered Koshkalda's deposition testimony that he opened the new bank account on August 8, 2017, for the sole purpose of depositing the $380,506.48 in proceeds from the Giacomo Property sale so they would not "vanish" or "disappear" or "something" — as would have happened if he had deposited those funds into the pre-existing bank accounts known to Seiko Epson or had disclosed the new account's existence to Seiko Epson.

To establish that the transfer of the Giacomo Property (and other property) constituted Koshkalda's property, Seiko Epson alleged that Koshkalda commingled his and his companies' money. For example, he deposited the Giacomo Property sale proceeds into his personal bank account, though the property was owned by Renoca, LLC. Further, Koshkalda's wholly-owned real property servicing company, Privat Group, LLC, did not keep the revenues and expenses for each of the other companies in separate accounts — much less segregate the revenue and expenses for each property. And Koshkalda deposited rental income from tenants into one of his personal bank accounts rather than into Privat Group's bank account.

6

Moreover, many millions of dollars were transferred back and forth between/ among Koshkalda and his companies, and he provided no accounting for these transfers — just bank statements showing withdrawals of "cash" and numerous unidentifiable "counter" transactions. In addition, ART had made deposits for properties it never owned on Koshkalda's behalf, or on behalf of his other companies, and paid expenses for properties as to which Koshkalda claimed he and his companies had no interest.

In defense of Seiko Epson's § 727(a)(2)(A)/(a)(7) and § 523(a)(2)(A) fraudulent transfer claims, Koshkalda argued that opening the new bank account, selling the Giacomo Property, depositing the sale proceeds and using them to pay his mortgage creditors did not violate the Freeze Orders or establish his intent to hinder, delay or defraud Seiko Epson. Koshkalda argued that, had he not made the mortgage payments, it would have triggered the accrual of default interest, which would have "encumbered" the assets in violation of the Freeze Orders. Thus, his actions did not constitute a dissipation of funds, but rather they were an attempt to comply with the Freeze Orders. Koshkalda did not dispute that he commingled funds with his companies. However, he argued that he never hid his activities from Seiko Epson nor used his companies to defraud creditors.

**Seiko Epson's claims under § 727(a)(3)/(a)(7)**

Seiko Epson moved for summary judgment based on Koshkalda's and ART's lack of records for the post-seizure period. Seiko Epson argued that

7

Koshkalda failed to keep basic records one would expect to be kept for his businesses, especially given the millions of dollars in transfers from one account to another, millions of dollars in product sales and related expenses, millions of dollars for the purchase and sale of numerous properties, and the revenues and expenses associated with renting out certain real property.

For example, Koshkalda failed to keep for himself, ART, and his other companies any general ledgers, check registers, cancelled checks, balance sheets, income statements, credit card statements, customer invoices, invoices from vendors/suppliers, accounts payable/receivable aging reports, loan agreements, and many of the bank statements from his and his companies' at least 118 bank accounts. Specifically, as to the bank statements for ART: the entity had 31 bank accounts and there were no bank statements for 14 of them; five accounts were missing statements from November 2016 through March 2019; three accounts were missing statements from December 2017 through March 2019; and one account in Koshkalda's name dba ART was missing statements from September 2015 through March 2019.

Seiko Epson's forensic accountant and expert witness, Ryan Nguyen, opined that, given the businesses of Koshkalda and his companies, the books and records from October 2016 to the petition date of January 5, 2018, were inadequate to ascertain the financial condition or the business transactions of Koshkalda and his companies. Nguyen said he was unable to determine: (1) the amount of assets and liabilities of Koshkalda and his companies; (2) if

8

there were undisclosed assets; (3) the validity of creditors' claims; (4) whether the chapter 7 trustee had any claims to pursue; (5) the purpose of Koshkalda's and his companies' 118 bank accounts; and (6) the accuracy of the information in what records Koshkalda (or third parties) provided or whether any apparent discrepancies in those records could be reconciled.          In defense of Seiko Epson's claims under § 727(a)(3)/(a)(7), Koshkalda argued that, because Seiko Epson had not returned the seized business records taken in September and October 2016, he could not provide them. In any case, argued Koshkalda, Seiko Epson could determine his and his companies' financial condition with the over 10,000 pages of post-seizure documents he did provide. Koshkalda asserted that, because of the Freeze Orders, he was denied electronic access to his bank accounts and therefore was unable to download all of his bank statements.

Koshkalda conceded that he was not the best bookkeeper but argued that the law did not require him to be. He admittedly never kept certain records, such as general ledgers, check registers or cancelled checks. And some things, such as customer invoices or invoices from vendors/suppliers, did not exist, because ART's ink cartridge business was on hold since the September and October 2016 seizures. Koshkalda argued that he was not an "insider" of ART within the meaning of § 101(31)(B), and so Seiko Epson was not entitled to summary judgment on its § 727(a)(7) claim for failure to keep records under (a)(3).

9

**Seiko Epson's claim under § 727(a)(5)**

Koshkalda moved for summary judgment on Seiko Epson's § 727(a)(5) claim. Seiko Epson had alleged that Koshkalda failed to explain satisfactorily the loss of substantial assets, including $1.7 million in a Ukrainian bank account. Koshkalda argued that he disclosed all of his assets, that all cash in his bank accounts was transferred to his bankruptcy estate, and that he lost real properties to foreclosure as a result of the Freeze Order, which prohibited him from paying the mortgages.

## 2. Ruling on the PSJ and MSJ

Prior to the hearing on the cross-motions for summary judgment, the bankruptcy court issued tentative rulings, which it later adopted as its final rulings in two written orders. As to the PSJ, the court:  granted the motion on Seiko Epson's § 727(a)(2)(A), (a)(3), and (a)(7)/(a)(3) claims; denied the motion on Seiko Epson's § 727(a)(7)/(a)(2)(A) claim; and denied as moot the motion for Seiko Epson's claim under § 523(a)(2)(A) (for fraudulent transfer). The court denied the MSJ in its entirety, including relief to Koshkalda on Seiko Epson's § 727(a)(5) claim, finding that disputed material facts existed, making summary judgment on that claim inappropriate.

The bankruptcy court also entered a final judgment in the adversary proceeding, which disposed of all of Seiko Epson's claims. The court entered judgment in favor of Seiko Epson under § 727(a)(2)(A), (a)(3), and (a)(7)/(a)(3), and it dismissed as moot its remaining claims under § 727(a)(5)

and § 523(a)(2)(A) and (a)(6). The court ordered that each party bear its own attorney's fees and costs. These timely cross-appeals followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction over the MSJ and PSJ orders and judgment under 28 U.S.C. § 158.[4]

## III. ISSUES

1.      Did the bankruptcy court err in granting the PSJ and denying the MSJ?

2.      Did the bankruptcy court err in denying costs without allowing Seiko Epson an opportunity to submit a bill of costs?

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment ruling. *Salven v. Galli (In re Pass)*, 553 B.R. 749, 756 (9th Cir. BAP 2016).

In objection to discharge appeals under § 727, the bankruptcy court's determinations of the facts are reviewed for clear error, and its selection of the applicable legal rules under § 727 and application of the facts to those rules are reviewed de novo. *See Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

---

[4] After filing his notice of appeal, Koshkalda filed a motion to alter or amend, which the bankruptcy court denied. To the extent he appeals the order denying that motion, we lack jurisdiction because Koshkalda did not file a notice of appeal after the order was entered or file an amended notice of appeal to include that order. *See Olomi v. Tukhi (In re Tukhi),* 568 B.R. 107, 112 (9th Cir. BAP 2017).

The bankruptcy court's decision whether to award costs is reviewed for an abuse of discretion. *Hosseini v. Key Bank, N.A. (In re Hosseini)*, 504 B.R. 558, 563 (9th Cir. BAP 2014); *Young v. Aviva Gelato, Inc. (In re Aviva Gelato, Inc.)*, 94 B.R. 622, 624 (9th Cir. BAP 1988). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or if its factual findings are illogical, implausible or without support from evidence in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## V. DISCUSSION

**A.    The bankruptcy court did not err in granting the PSJ and denying the MSJ.**

### 1.    Summary judgment standards

Civil Rule 56, made applicable in adversary proceedings by Rule 7056, mandates entry of summary judgment where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1045 (9th Cir. 2003). A material fact is one that, "under the governing substantive law . . . could affect the outcome of the case." *Id.* at 1046 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

////

12

### 2. Analysis

We begin our analysis by noting that, to effectuate the fresh start policy, a claim for denial of a discharge under § 727 is construed liberally in favor of the debtor and strictly against the party objecting to discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986).

### a. The bankruptcy court did not err by denying Koshkalda's discharge under § 727(a)(3).

As relevant here, § 727(a)(3) directs the court to grant a debtor a discharge unless the debtor has failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless the debtor's failure to act was justified under the circumstances. The purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs. *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008). "The disclosure requirement removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'" *Id.* (quoting *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir. 1953)). "The statute does not require absolute completeness in making or keeping records." *Id.* (citing *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)). "Rather, the debtor must 'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his

13

business transactions for a reasonable period in the past.'" *Id.* (quoting

*Rhoades*, 453 F.2d at 53).

> To establish a prima facie case under § 727(a)(3), a creditor must show:
>
> (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. After showing inadequate or nonexistent records, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records.

*Id.* The bankruptcy court found that the undisputed evidence overwhelmingly demonstrated that Koshkalda failed to keep adequate business records, and that this failure made it impossible to ascertain his financial condition and material business transactions.

Many of Koshkalda's arguments here are irrelevant because they pertain to *pre-seizure* documents he claims Seiko Epson failed to return. The documents at issue in the PSJ were those that Seiko Epson claimed Koshkalda failed to keep and preserve *post-seizure*. We also reject his argument that the bankruptcy court improperly considered the adequacy of his pre-seizure records. It did not consider such records. In any case, it appears that Nguyen only referenced such records to illustrate Koshkalda's and his companies' need for business records.

Koshkalda argues that the bankruptcy court should not have faulted him for not having post-seizure business records for ART because it was no

longer engaged in the ink cartridge business after the September and October 2016 seizures. But ART was apparently engaged in other types of business after October 2016 because Koshkalda testified that ART had $2 million in revenues in 2017. Yet, he produced no invoices, purchase orders, or anything else for those sales.

Lastly, Koshkalda argues that he explained all of the transactions with which Seiko Epson took issue and supported those explanations with documents that he and third parties produced in discovery. He argues that these documents provided a clear picture as to his financial condition and were enough for the chapter 7 trustee to effectively administer his estate. But § 727(a)(3) "places an affirmative duty on the *debtor* to create books and records accurately documenting his business affairs." *In re Caneva*, 550 F.3d at 762 (emphasis added). The trustee and creditors are not required to subpoena third parties to get financial information a debtor should have. Further, according to Nguyen's undisputed testimony, what post-seizure records Koshkalda did produce for himself and his entities were incomplete. He provided only some (but not all) bank statements, a few credit card statements, and documents relating to the purchase and sale of real properties.

"[W]hen a debtor is sophisticated and carries on a business involving substantial assets, creditors have an expectation of greater and better record keeping." *Id.* Koshkalda owned numerous businesses and had substantial

15

assets. Yet, he provided no evidence of any basic record keeping whatsoever for the post-seizure period for himself or any entity, such as general ledgers, check registers, invoices, balance sheets and income statements, and he admitted that he had none. Without those documents, which Koshkalda admitted he did not keep, the trustee and creditors could not ascertain his true financial condition and material business transactions.

Accordingly, the bankruptcy court did not err in granting Seiko Epson and denying Koshkalda summary judgment on Seiko Epson's claim under § 727(a)(3).

> **b.     The bankruptcy court did not err by denying Koshkalda's discharge under § 727(a)(7)/(a)(3).**

Section 727(a)(7) provides for denial of a debtor's discharge if the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of § 727(a), on or within one year before the date of the filing of the petition, or during the case, in connection with another bankruptcy case concerning an insider. Simply put, § 727(a)(7) deprives an individual debtor of a discharge if he or she engages in conduct on behalf of an insider which violates any of these enumerated subsections of § 727(a).

To succeed on a § 727(a)(7) claim, the movant must prove by a preponderance of the evidence:  (1) the elements of § 727(a)(2), (3), (4), (5), or (6) are met; (2) the actions occurred during the current case or within one year prepetition; and (3) the actions are in connection with the bankruptcy case of

an insider. *De Anda v. Song (In re Song)*, 449 B.R. 84, 97 (Bankr. N.D. Cal. 2011). For an "individual" debtor, the term "insider" includes a "corporation of which the debtor is a director, officer, or person in control." § 101(31)(A)(iv). The term "corporation" includes an "unincorporated company or association." § 101(9)(A)(iv). Because the term "corporation" is a "term of art that is broader than the ordinary meaning of that word," *Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717 n.5 (9th Cir. BAP 2004), we have interpreted § 101(9)(A)(iv) to include limited liability companies, *Vill. at Lakeridge, LLC v. U.S. Bank N.A. (In re Vill. at Lakeridge, LLC)*, BAP Nos. NV-12-1456-PaKiTa and NV-12-1474-PaKiTa, 2013 WL 1397447, at *4 n.8 (9th Cir. BAP Apr. 5, 2013) (citing *In re Longview Aluminum, LLC*, 657 F.3d 507, 509 n.1 (7th Cir. 2011)), *aff'd sub nom. U.S. Bank N.A. v. Vill. at Lakeridge, LLC (In re Vill. at Lakeridge, LLC)*, 814 F.3d 993 (9th Cir. 2016), *aff'd sub nom. U.S. Bank N.A. ex rel. CW Capital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960 (2018).

Ordinarily, determination of insider status is a question of fact. *Miller Ave. Prof'l & Promotional Servs., Inc. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 630 (9th Cir. BAP 2004). In this case, however, the bankruptcy court held that ART was an insider of Koshkalda as a matter of law, based on undisputed facts. Koshkalda does not dispute that ART is a debtor or that he, as the human responsible for ART, failed to keep and preserve books and records for ART. He disputes the bankruptcy court's purported ruling that *he* is a statutory insider of ART. The court made no

such ruling. In fact, it correctly stated that the relevant inquiry is whether *ART* is a statutory insider of Koshkalda. The court found that ART was an insider of Koshkalda under § 101(9)(A)(iv) and (31)(A)(iv). It also found that ART was a non-statutory insider of Koshkalda.

We reject Koshkalda's argument that the bankruptcy court's ruling is contrary to the Panel's holding in *Enterprise Acquisition Partners*, 319 B.R. at 632. There, the Panel considered a different statute, namely § 101(31)(B), and the term "insider" in the context of when the debtor is a "corporation." The debtor at issue here was Koshkalda, not ART. Further, whether the term "corporation" in § 101(9)(A)(iv) includes an LLC was not before the Panel. Thus, *Enterprise Acquisition Partners* has no relevance here. In any case, as we stated above, the Panel has opined that the term "corporation" in § 101(9)(A)(iv) includes an LLC. *In re Vill. at Lakeridge, LLC*, 2013 WL 1397447, at *4 n.8.

Accordingly, the bankruptcy court did not err in granting Seiko Epson and denying Koshkalda summary judgment on Seiko Epson's claim under § 727(a)(7)/(a)(3).[5]

---

[5] Koshkalda also appeals the bankruptcy court's order denying his motion to compel discovery. Interlocutory orders such as this merge into the final judgment deciding the merits. *Roque v. Yniguez (In re Roque)*, BAP No. EC-13-1048-KiPaJu, 2014 WL 351424, at *5 (9th Cir. BAP Jan. 31, 2014) (citing *United States v. Real Prop. Located at 475 Martin Ln., Beverly Hills, Cal.*, 545 F.3d 1134, 1141 (9th Cir. 2008)). We review orders concerning discovery for an abuse of discretion. *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (per curiam).

(continued...)

### c. The bankruptcy court did not err by denying Koshkalda's discharge under § 727(a)(2)(A).

Although we could affirm on the bankruptcy court's decisions to deny Koshkalda's discharge under § 727(a)(3) or (a)(7), we also review its ruling denying his discharge under § 727(a)(2)(A). While it is the rare case where a debtor's intent to hinder, delay or defraud a creditor can be established on summary judgment, the court's finding of intent was warranted here.

Section 727(a)(2)(A) directs the court to grant a debtor a discharge unless the debtor, with intent to hinder, delay, or defraud a creditor has transferred or concealed property of the debtor, within one year before the date of the filing of the petition. The burden of proof is on the creditor to show by a preponderance of the evidence that: (1) the debtor transferred or concealed property; (2) the property belonged to the debtor; (3) the transfer occurred within one year of the bankruptcy filing; and (4) the debtor executed the transfer with the intent to hinder, delay or defraud a creditor. *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 273 (9th Cir. BAP 1990). The intent to

---

[5](...continued)

Koshkalda argued that Seiko Epson failed to return the business records it seized from ART's premises in September and October 2016, and that without them, he was unable to defend against the § 727(a)(3) claim. Koshkalda moved to compel access to the storage facility where he believed Seiko Epson was still allegedly storing the seized records. Seiko Epson maintained that all records had been returned and submitted sworn declarations in support. The bankruptcy court denied the motion because Koshkalda failed to provide any evidence that the records remained at the storage facility. We conclude that the bankruptcy court did not abuse its discretion in denying Koshkalda's motion to compel discovery.

19

hinder, delay, or defraud is a "question of fact that requires the trier of fact to delve into the mind of the debtor and may be inferred from surrounding circumstances." *Searles v. Riley (In re Searles)*, 317 B.R. 368, 379 (9th Cir. BAP 2004) (citing *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir. 1992)).

Koshkalda does not challenge the bankruptcy court's finding that he was an alter ego of his many wholly-owned companies including, but not limited to, ART and Renoca, LLC. Thus, the transfers at issue consisted of Koshkalda's property. *See Singh v. Singh (In re Singh)*, BAP No. CC-17-1353-FLS, 2019 WL 1231146, at *6 (9th Cir. BAP Mar. 14, 2019) (debtor's property includes property held by debtor's alter ego). There is also no dispute that the transfers at issue occurred within one year of the petition date.

Koshkalda does, however, challenge the bankruptcy court's finding as to his intent. He first argues that whether or not the transfers violated the Freeze Orders was "highly disputable" and should have been adjudicated by trial. Koshkalda also continues to defend the monthly mortgage payments he made after the Freeze Orders, arguing that they were necessary to avoid accrual of default interest and late charges, which he believed constituted an "encumbrance" that violated the Freeze Orders. Koshkalda fails to recognize that payments to other creditors would not necessarily negate his intent to hinder, delay or defraud Seiko Epson. Section 727(a)(2)(A) "requires only that the debtor make the transfer with intent to hinder, delay, or defraud 'a

20

creditor.' There is no requirement that the debtor intend to hinder all of his creditors." *In re Adeeb*, 787 F.2d at 1343. Thus, Koshkalda's intent to protect his mortgage creditors does not negate his intent to hinder or delay Seiko Epson. *Id.*

As the bankruptcy court noted, the Freeze Orders were intended to preserve Koshkalda's property for Seiko Epson's benefit and to prevent the very activity he engaged in. He clearly ignored them, and was even cited for contempt by the district court for doing so. As much as Koshkalda wants to debate what the Freeze Orders permitted or prohibited, the direct evidence showed that he consciously and deliberately transferred property that clearly was subject to the Freeze Orders and concealed property from Seiko Epson. His intent to hinder, delay or defraud Seiko Epson was established by his sale of the Giacomo Property on August 10, 2017, his opening of the bank account two days prior (unbeknownst to Seiko Epson) in order to deposit the $380,506.48 in sale proceeds, and his immediate transfer of those funds to others for the admitted purpose of preventing the money from "vanishing" or "disappearing" to Seiko Epson. A debtor's admission that property was transferred to another to avoid garnishment by a judgment creditor establishes a prima facie case under § 727(a)(2)(A). *In re Aubrey*, 111 B.R. at 273.

Koshkalda argues that the TRO expired on August 7, 2017. Thus, during the "gap" period of time between August 7, 2017, and the August 22,

2017 Freeze Order, he maintains that he was permitted to engage in the conduct he did. Koshkalda did not raise this argument in the cross-motions for summary judgment. In any case, we reject it. Koshkalda knew that Seiko Epson was seeking a permanent restraining order at the August 7, 2017 hearing, which the district court orally granted. Therefore, his transfers during the "gap" period were made with the knowledge that his assets were likely to be frozen or were possibly subject to being frozen. And his admission shows his intent in opening the new bank account and immediately transferring nearly all of the sale proceeds to third parties was to prevent Seiko Epson from getting any of the available funds.

Accordingly, the bankruptcy court did not err in granting Seiko Epson and denying Koshkalda summary judgment on Seiko Epson's claim under § 727(a)(2)(A).

### d. The bankruptcy court did not err in denying Koshkalda summary judgment on Seiko Epson's § 727(a)(5) claim.

The only argument Koshkalda raises here is that the bankruptcy court erred by "completely ignoring his arguments" and ruling in favor of Seiko Epson on this claim. We disagree. The court carefully reviewed the evidence submitted by both parties regarding Seiko Epson's § 727(a)(5) claim and found that material facts existed to preclude summary judgment. In any case, even if we were to reverse on this issue, the record supports the court's decision to deny Koshkalda's discharge under § 727(a)(2)(A), (a)(3), and

(a)(7).[6]

## B.    The bankruptcy court erred in denying costs without allowing Seiko Epson an opportunity to submit a bill of costs.

Seiko Epson argues that the bankruptcy court erred by not giving it the opportunity to file a bill of costs after entry of the judgment. Instead, the court summarily denied them in the judgment. Koshkalda responds that Seiko Epson never raised the argument of awarding attorney's fees in its PSJ, so it should be precluded from doing so on appeal. Seiko Epson is not asking for attorney's fees; it is asking for the opportunity to file a bill of costs, which were prayed for in the complaint.

Rule 7054(b)(1) provides —

Costs Other Than Attorney's Fees. The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. . . . Costs may be taxed by the clerk on 14 days' notice; on motion served within seven days thereafter, the action of the clerk may be reviewed by the court.

It is undisputed that Seiko Epson was the prevailing party in an objection to discharge case, and there is no statutory prohibition to the award of costs.

---

[6] The bankruptcy court denied Seiko Epson's claim under § 523(a)(2)(A) (fraudulent transfer) as moot, entered a judgment dismissing that claim as moot and, therefore, denied the MSJ with respect to that claim and dismissed as moot Koshkalda's then-pending motion to dismiss that claim. Other than reciting those facts, Koshkalda does not assign any error by the court in denying his MSJ on this claim or dismissing as moot the motion to dismiss this claim. Thus, this issue has been abandoned. *Wilcox v. Comm'r,* 848 F.2d 1007, 1008 n.2 (9th Cir. 1988) (arguments not addressed on appeal by a pro se litigant are deemed abandoned).

With its permissive language, an award of costs under Rule 7054(b)(1) is within the sound discretion of the bankruptcy court. *In re Aviva Gelato, Inc.*, 94 B.R. at 624. Other than citing Rule 7054(b), Seiko Epson does not cite any authority that a prevailing party must be given the opportunity to submit a bill of costs before the court can deny them.

While the rule may provide support for Seiko Epson's argument despite its permissive nature, Civil Local Rule 54-1 for the Northern District of California[7] certainly suggests that what Seiko Epson argues is true:

> 54-1. Filing of Bill of Costs
>
> (a) Time for Filing and Content. No later than 14 days after entry of judgment or order under which costs may be claimed, a prevailing party claiming taxable costs must serve and file a bill of costs.
> . . .
> (c) Waiver of Costs. Any party who fails to file a bill of costs within the time period provided by this rule will be deemed to have waived costs.

In other words, the prevailing party has the opportunity to file and serve within 14 days after entry of the judgment a bill of costs, and if the party fails to do so, the party is deemed to have waived costs. Accordingly, because the rule contemplates the opportunity to request costs after judgment, the

---

[7] Bankruptcy Local Rule 1001-2(a) for the Northern District of California states that Civil Local Rules 54-1 through 54-4 apply to matters regarding costs in bankruptcy cases and adversary proceedings.

bankruptcy court should have given Seiko Epson an opportunity to submit a bill of costs before summarily denying them in the judgment.

Alternatively, we conclude that the bankruptcy court's ruling denying costs cannot stand, because the court failed to provide any reasons for denying them. Even though Rule 7054(b)(1) is more permissive as to the allowance of costs as compared to the more mandatory nature of Civil Rule 54(d)(1) (the court "should" allow costs to the prevailing party), the court must state its reasons for denying costs under Rule 7054(b)(1). *In re Hosseini*, 504 B.R. at 564; *In re Aviva Gelato, Inc.*, 94 B.R. at 624.

Accordingly, because the bankruptcy court did not give Seiko Epson an opportunity to submit a bill of costs as contemplated by Civil Local Rule 54-1, if not also Rule 7054(b)(1), and further erred by not providing the reasons for denying costs, we must VACATE that part of the judgment.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment in part, VACATE the judgment in part, and REMAND for the limited purpose of allowing Seiko Epson the opportunity to submit a bill of costs. Koshkalda will have the opportunity to object to the bill of costs once filed.